168 So. 42

## BRASHER v. FIRST NAT. BANK OF BIRMINGHAM.

### 6 Div. 836.

Supreme Court of Alabama.

Jan. 23, 1936.

Rehearing Denied May 7, 1936.

Victor H. Smith, of Birmingham, for appellant.

342

Cabaniss & Johnston and K. E. Cooper, all of Birmingham, for appellee.

BROWN, Justice.

The appeal is by the plaintiff from a judgment of nonsuit, authorized by section 6431 of the Code, to reverse adverse rulings on the defendant's demurrer to counts 4, 5, A, B, C, D, and E of the complaint, and embodied in the record in what is designated as a bill of exceptions, which shows nothing more than the rulings on the demurrer.

The statute above cited, where the nonsuit is superinduced by adverse rulings on demurrer to pleadings, authorizes an appeal and review on the record proper, and in such case a bill of exceptions serves no purpose except to incumber the record. Herrmann v. Mobile County, 202 Ala. 274, 80 So. 112; Bush v. Russell, 180 Ala. 590, 61 So. 373; Berlin Machine Works v. Ewart Lumber Co., 184 Ala. 272, 63 So. 567; Russell v. Garrett, 208 Ala. 92, 93 So. 711; Singer Sewing Machine Co. v. Henderson, 1 Ala.App. 483, 56 So. 108.

The plaintiff, before the ruling of the court was invoked, withdrew all counts of the complaint except those mentioned above, and the defendant withdrew all grounds of demurrer except grounds taking the following points: That the said counts do not state a cause of action; that the decree of the circuit court referred to in the complaint is res adjudicata of the matters complained of; that this suit is a collateral attack on said decree; that the facts alleged show that the plaintiff consented to the decree and is estopped thereby; and that the alleged advice by the defendant to the plaintiff was not an actionable wrong, but was the mere innocent expression of an opinion.

The several counts are in case, and the gravamen thereof is that the defendant fraudulently procured the plaintiff's consent to the rendition of the decree by the circuit court of Jefferson county, in equity, in the case of Breen & Gardien Insurance Agency, Inc., et al. Complainants, v. Lela J. Brasher, respondent, authorizing the defendant to turn over to this plaintiff certain "participations" in loans, the property of the defendant, of "little or no market value," in lieu of $81,758.23, proceeds of said insurance policies, adjudged to be the property of this plaintiff, to plaintiff's hurt and defendant's gain.

Counts 4 and 5, it may be conceded, are subject to the demurrable defect that their averments do not negative that plaintiff consented to said decree after being fully advised of the nature and want of market value of said "participations," and the contents and legal effect of said consent decree; but it is doubtful whether this point is taken by the specific grounds of demurrer not withdrawn. The point is not presented by ground 1; it is general and within the condemnation of the statute. Code 1923, § 9479; Commercial Credit Co. v. Ward & Son Auto Co., 215 Ala. 34, 109 So. 574; Perfection Mattress & Spring Co. v. Dupree, 216 Ala. 303, 113 So. 74.

Count A, when stripped of redundancy, avers, in substance and legal effect, that in May, 1929, and continuously thereafter, the defendant was in the banking business in the city of Birmingham, and conducted in connection with its business a trust department, holding itself out as "possessing the knowledge, skill, experience, competency, thoroughness, and faithfulness for the management of properties and es-

tates of others * * * and of advising widows, orphans, heirs, and other persons as to the investment of funds which such persons might receive or acquire by inheritance or otherwise, and invited the confidence of persons desiring to avail themselves of its services"; that plaintiff's husband, Omer Brasher, died in May, 1929, and the plaintiff employed the defendant to advise and assist her in the probation of his will and in the management of his estate, and to advise and assist her in the management, conservation, protection, and investment of her individual funds; that defendant accepted such employment and undertook to advise plaintiff and entered upon the performance of the duties of such employment, and so continued until after the 8th day of February, 1932, and plaintiff relied upon the defendant to so advise her; that thereafter a bill in equity was filed by Breen & Gardien Insurance Agency, Inc., et al. against the plaintiff, involving the insurance on the life of plaintiff's deceased husband, and the defendant was appointed as receiver to take possession of said policies and collect the insurance and hold the same subject to the further orders of the court; that the defendant as such receiver collected and received the proceeds of said policies, aggregating $100,000; that defendant, without authority of law, and without the consent of the plaintiff, wrongfully invested, expended, used, or diverted a large part of said proceeds in certain undivided interests or "participations" in certain loans or indebtednesses, which were payable to and held by defendant, setting forth sixteen loans aggregating $268,850, ranging from $3,850 to $70,000, in which the defendant as receiver had invested some of the proceeds of said insurance in "participations" ranging from $200 to $20,000, aggregating $45,575, the remaining interests "were owned and held by the defendant * * * for its own behalf or for the benefit of other parties, whose names" are unknown to plaintiff; that no separate writing was taken by the defendant as receiver to evidence such interest in such "participations" acquired by the investment of such proceeds to distinguish such "participations" from others, and the mortgages securing said loans were executed or transferred to and held by the defendant, without evidence of the interest or rights of those whose funds were so invested; that while defendant was engaged in representing the plaintiff, advis-

ing and assisting plaintiff in the management of her said husband's estate, and in the management, conservation, protection, and investment of plaintiff's individual estate, the defendant, who had knowledge of the contents of the "consent decree" rendered by the circuit court in said receivership proceedings, which ascertained and adjudged that the creditors, complainants in said cause, were entitled to $25,000 of said funds, and that the balance of $81,758.23 was the property of plaintiff (defendant in said cause), which said decree recited that plaintiff had consented to the investment of the proceeds of said insurance money in said "participations" and authorized the defendant as receiver to turn over to plaintiff certain securities, consisting of said "participations," which were worth greatly less than their face value, and which had little or no market value, in lieu of said $81,758.23, facts known to defendant, but of which plaintiff had no knowledge; that defendant had an interest other than as receiver to conserve in procuring the plaintiff's consent, and of which plaintiff was without knowledge; that plaintiff was ignorant of the contents of said decree in so far as it recited that she had consented to the investment of the proceeds of said insurance policies in said "participations," and that it authorized the defendant to turn over to the plaintiff said "participations" in lieu of said $81,758.23, by delivering and assigning to her the securities remaining in its hands; that defendant, without disclosing to the plaintiff the contents of said decree in the above respects, and without disclosing to her its interest other than as receiver in having said decree entered, and without disclosing the facts in respect to the value of said securities, that it had foreclosed on some of them and had to purchase at the foreclosure sale, without realizing funds to meet the liability, and was burdened with taxes and tax liens, wrongfully represented to the plaintiff that it would be to her interest to consent that said decree be entered, and plaintiff relying on the advice and representation of the defendant gave her consent thereto.

Count B contains substantially all the averments of count A, with the further averment that defendant procured the decree to be entered; that its officers and agents were present when plaintiff gave her consent in writing, and acting within the line and scope of their employment

in respect to the pending transaction knew that plaintiff was under the belief that after setting apart $25,000 of the funds to satisfy the complainants, and intervening creditors, by the terms of said decree she would receive the balance of $81,758.23, in cash; that she had no knowledge that said decree authorized the defendant to discharge its liability under said decree by transferring to her said impoverished securities, facts known to the defendant and its agents or servants handling said pending transaction, and advising plaintiff, and concealing said matters from the plaintiff, nevertheless advised her to enter into said consent decree, and having full faith in the defendant's integrity, ability, and faithfulness, relied on said advice and gave her consent thereto, to her hurt and defendant's gain.

Count C, like count B, is in substance the same as count A, with the added averments that plaintiff "consented to the rendition of said decree in reliance upon the faithfulness and integrity of the defendant to advise her in such matters, and that the defendant, claiming to act in pursuance of the rights given it · by the terms of said decree, turned over to the plaintiff the said participations or interests in said indebtednesses in lieu of the amount of cash invested in such participations or interests, *by receiving and holding* the same as agent or trustee of plaintiff, and that as a proximate consequence and result thereof plaintiff lost a large sum, to-wit $25,000.-00." (Italics supplied.)

Count D contains all the averments of the other counts, with the further averments that "the defendant, by and through its officers and agents, who were then and there acting within the line and scope of their employment as such officers and agents, undertook to advise and assist this plaintiff in the defense of said suit, which said suit involved the proceeds of certain policies of insurance on the life of her said husband, which were payable to plaintiff, and that the defendant by and through its said officers and agents, who were so acting within the line and scope of their employment, did advise with the plaintiff in regard to the defense of said suit, and did advise with her as to the employment of an attorney or attorneys to represent her in said suit, and did frequently consult with the plaintiff in regard to the defense of said suit and the progress of same, and that plaintiff, prior to said 3rd day of February, 1932, advised the defendant of her reliance upon the defendant to assist and advise her in such defense of said suit," and while so acting as plaintiff's adviser in the defense of said suit and in and about the protection of her interest, without disclosing the full contents and effect of said decree, the fact that the proceeds of said policies had been invested by it in said "participations," that they were impoverished and of little or no market value, advised the plaintiff to consent to the rendition of said decree, and plaintiff having full faith and confidence in said defendant gave her consent thereto, and as a proximate consequence she suffered great damage.

The sole question presented is: Are the averments of said counts, or any one of them, sufficient to sustain an action in case against the defendant, not as receiver, but as an individual, for the alleged damages suffered by plaintiff? To state this question in different form: Are said counts subject to the defects pointed out by the demurrer filed thereto, and not withdrawn?

■ If the averments of said counts A, B, C, and D, are true, and they must be so treated on this appeal, a relation of confidence and trust existed between the plaintiff and the defendant in respect to the management and protection of plaintiff's interest in the proceeds of said insurance policies, and if it procured her consent to said decree without disclosing its contents and legal effect, and the impoverished state of said participations, it was guilty of fraud and deceit. If, as averred in count D, the defendant engaged and undertook to aid and advise plaintiff in the defense of said litigation, and procured her consent to said decree through said fraud, it is liable for the damages which she has sustained.

■ "Where a relation of trust and confidence exists between the parties it is the duty of the party in whom the confidence is reposed to make full disclosure of all material facts within his knowledge relating to the transaction in question, and any concealment of material facts by him is a fraud," etc. 12 R.C.L. page 311, § 72; Juzan et al. v. Toulmin, 9 Ala. 662, 44 Am. Dec. 448; Kelly v. McGrath, 70 Ala. 75, 45 Am.Rep. 75.

■ Where confidential or fiduciary relations exist, which afford the power and means to one party to a transaction to take

undue advantage of the other party, "and there is found the slightest trace of undue influence or unfair advantage redress will be given to the injured party." 12 R.C.L. pages 232, 233, § 5; Williams v. Powell, 66 Ala. 20, 41 Am.Rep. 742; Shipman v. Furniss, 69 Ala. 555, 44 Am.Rep. 528; Weaver v. Lapsley, 42 Ala. 601, 94 Am.Dec. 671; Ferguson, pro ami, v. Lowery et al., 54 Ala. 510, 25 Am.Rep. 718; Verner et al. v. Mosely, 221 Ala. 36, 127 So. 527.

■ "Fraud may be committed by the suppression of the truth, as well as by the suggestion of falsehood, and it is equally competent for the court to relieve against it whether it is committed in one way or the other. The one acts negatively, the other positively; both are calculated, in different ways, to produce the same result." 12 R.C.L. page 305, § 66; Camp v. Camp, 2 Ala. 632, 36 Am.Dec. 423; Einstein, Hirsch & Co. v. Marshall & Conley, 58 Ala. 153, 29 Am.Rep. 729.

The foregoing are elementary propositions, the soundness of which cannot be doubted.

The statute, Code 1923, § 5676, provides: "Fraud by one, accompanied with damage to the party defrauded, *in all* cases gives a right of action." Section 5677 defines "deceit" as "willful misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, *unless done in such a manner as to deceive and mislead,* will not support an action." And section 8050 provides that "suppression of a fact material to be known, and which the party is under an obligation to communicate, constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties, or from the particular circumstances of the case." (Italics supplied.)

■ Therefore, in the circumstances alleged in the complaint, the defendant was under duty to disclose to plaintiff the facts in respect to the alleged "participations," and if it undertook to advise the plaintiff in respect to her interest, and did advise her to enter into said consent decree, it was under duty to disclose to her its contents and legal effect, and in failing to do so, it was guilty of fraud. Williams et al. v. Bedenbaugh, 215 Ala. 200, 110 So. 286; Verner et al. v. Mosely, 221 Ala. 36, 127 So. 527; National Park Bank v. Louisville & N. R. Co., 199 Ala. 192, 74 So. 69.

In Williams et al. v. Bedenbaugh, supra, it was observed: "If the plaintiff applied to the defendants, as business advisers, for assistance in finding a safe and profitable investment for her money, and, assuming the role of friends, they directed and advised her to invest in the stock of their own company, known to be in a failing condition, concealing that fact from her, and, not knowing the facts, she invested on such advice, a case of fraud appears." 215 Ala. 200, 203, 110 So. 286, 288.

■■ Case is an appropriate action, and it is well settled that the party defrauded need not rescind the transaction, but may confirm it, retain what he has received, and recover such damages as he has sustained as a proximate consequence of the fraud. Williams et al. v. Bedenbaugh, 215 Ala. 200, 110 So. 286; Munroe v. Pritchett, 16 Ala. 785, 50 Am.Dec. 203; McGar v. Williams, 26 Ala. 469, 62 Am.Dec. 739; 12 R.C.L. page 409, § 155.

In Mobile Life Insurance Co. v. Randall, 74 Ala. 170, 176, 177, it was said:

"The history of the action on the case, or special action on the case, as it was originally called, is well known to the profession. It is not one of the original common-law writs. In the progress of judicial contestation, it was discovered that there was a mass of tortious wrongs, unattended by direct and immediate force, or where the force, though direct, was not expended on an existing right of present enjoyment, for which the then known forms of action furnished no redress. The action on the case was instituted to meet this want. It may then be styled a suppletory, personal action, ex delicto. It was designed to be residuary in its scope, but is alway classed among the actions in tort.

"For mere breaches of ordinary contracts, without more, this action will never lie; for, in such breach of promise, there is no element of tort, in the legal sense of that term, —'a wrong independent of contract.'—Bouvier's Dictionary. Nevertheless, wrongs which will maintain an action on the case are frequently committed in the non-observance of duties, which are but the implication of contract-obligation. Contracts have a leading, primary obligation—to do a specified act; to perform a specified service; or to pay or deliver a specified thing of value. A mere failure to perform such a contract-obligation is not a tort, and it furnishes no foundation for an action on the case. But

contracts, however briefly expressed, are to be interpreted in the light of great legal principles, which enter into and permeate all human transactions. Hence, the duty of requisite skill, fidelity, diligence, and a proper regard for the rights of others, is implied in every obligation to serve another. The degree of these qualifications is graduated by the nature of the service undertaken; but they inhere in, and form a part of all dealings between man and man. The observance of these duties is necessary to the peace, good order and success, of all municipal regulation. Now, for a breach of the contract-obligation, the remedy is an action ex contractu. If the implications, or collateral duties of the service, be disregarded, and injury ensue, this is a tort, for which an action on the case will lie."

And in 11 Corpus Juris page 3, § 2: "The action on the case is founded on the mere justice and conscience of plaintiff's right to recover and is in the nature of a bill in equity, being peculiarly adapted to the redress of injuries arising from any new relation in which parties may be placed by the varying changes in society and business, whether arising from statutory provisions or otherwise."

The appellee does not controvert the soundness of the foregoing principles, but insists they cannot be applied to the circumstances stated in the several counts, because, as it insists, this suit is a collateral attack on the decree of the circuit court, entered by consent of the parties in the equity proceedings, in which the defendant was appointed by the court and acted as receiver of the funds in controversy between the parties to that suit. In support of this contention, the appellee cites the following text from Corpus Juris and Ruling Case Law, illustrative of the principles behind which it seeks to take cover for the fraud alleged in the complaint and confessed by the demurrer:

34 Corpus Juris page 524, § 830: "The validity or correctness of a judgment cannot be impeached in a subsequent action brought by the former defendant against the former plaintiff, involving the same issues, or in an action to recover back the money paid under the judgment," etc.

15 Ruling Case Law page 856, § 329: "It has also been held that a judgment cannot be impeached collaterally, in a subsequent action for damages, by proof that the plaintiff in it, while suit was pending, practiced deceit upon the defendant, whereby the latter was led to forbear interposing a defense fraudulently concealed from him."

It is not necessary to question the soundness of these principles of law here, because they are not applicable to the case in hand, for several reasons which we now state.

They only apply to the parties and their privies to the litigation in which the judgment or decree was rendered, and to' the issues within the scope of that proceeding. The same section from which the text in Ruling Case Law above quoted was taken states the reason of the rule: "Where the same matter has been either actually tried, or so in issue that it might have been tried, it is not again admissible [as between the parties to that suit]; and the party is [parties are] estopped to set up such fraud, because the judgment is the highest evidence and cannot be controverted." 15 R.C.L. page 855, § 329.

A receiver appointed by the court in a proceeding in equity is not a party or the privy of a party to such proceeding, but is merely a disinterested stakeholder, "the hand or arm of the court," and "stands in an indifferent attitude, not representing the plaintiff or the defendant, but really representing the court." 23 R.C.L. page 7, § 2; 53 Corpus Juris page 11, § 1.

The defendant's relation as trustee, protector, and adviser of plaintiff, and the duties incident thereto, were not within the scope of the proceedings between the creditors of Brasher and his widow attacking the insurance policies as a fraudulent conveyance.

This suit is not against the First National Bank as receiver, and in no way attacks the decree which authorized the receiver to turn over the alleged impoverished securities in lieu of the money, but is a suit against it as the plaintiff's trustee, agent, and adviser, for a breach of the duty of failing to disclose material facts in respect to the contents of the decree and the condition of said securities, in consequence of which said securities, the property of the defendant, were palmed off on the plaintiff in lieu of said sum of $81,758.-23, the proceeds of said insurance adjudged to be her property, and to her injury.

If the facts alleged in the several counts of the complaint are true, plaintiff's trustee, agent, and adviser practiced fraud in procuring the rendition of the decree, and this fraud can in no way be charged against or

imputed to the plaintiff's adversaries in that proceeding—the creditors of her deceased husband. Therefore, she is without remedy in equity to set aside, vacate, and annul said decree. That remedy is open only to a party to a suit where the judgment or decree has been brought about by the fraud of the adverse party—fraud extrinsic of the proceedings—unmixed with fault or negligence on the part of the complainant; and the fault or negligence of the complainant's representative or agent is the fault of the complainant. Evans v. Wilhite et al., 167 Ala. 587, 52 So. 845; 15 R.C.L. page 756, § 209.

Speaking of the nature and effect of consent judgments and decrees, Freeman on Judgments (5th Ed., Vol. 3, page 2779, § 1352) says: "Since a consent judgment or decree is in the nature of a contract, if it is vacated in part it must be vacated in toto. The court has no more power to modify or vacate in part a judgment by consent than it would have to modify a contract between the same parties."

The alleged fraud practiced by the plaintiff's trustee, agent, and adviser, on the plaintiff, certainly does not authorize or justify a court of equity in vacating the decree which, by consent of the parties, ascertained the rights of the complainants in the equity proceedings, who did not participate in such fraud, and who have no doubt accepted the benefits thereof.

Therefore, unless the plaintiff can maintain an action on the case, which, to quote from 11 Corpus Juris page 4, § 3, "is an outgrowth of the principle that whenever the law gives a right or prohibits an injury, it will also afford a remedy," she is remediless, and the statute, Code 1923, § 5676, which declares that "fraud by one, accompanied with damage to the party defrauded, *in all cases* gives a right of action," is but a delusion and a snare; yet the people in the exercise of their sovereignty have declared "that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay." Const.1901, § 13. (Italics supplied.)

■ Our judgment is that this action is not an attack on the decree of the circuit court, in equity, but is based on fraud practiced by the defendant outside the scope of that proceeding; and the demurrer to counts A, B, C, and D of the complaint was erroneously sustained.

Reversed and remanded.

THOMAS, BOULDIN, and KNIGHT, JJ., concur.

### On Rehearing.

BROWN, Justice.

The plaintiff in this suit was the sole defendant in the equity proceeding in which said consent decree was entered, and by said decree she was awarded, not a lot of impoverished participations in loans, the property of the bank, the defendant here, but $81,758.23 in cash, a large part of the proceeds of the life insurance policies on the life of her deceased husband, and by the fraud and deceit of the defendant in not disclosing to the plaintiff that said decree contained any such proviso, it—the bank—palmed off on the plaintiff said lot of impoverished participations in loans in satisfaction of its liability as receiver for said $81,758.23, in cash, the plaintiff then being ignorant of the fact that said decree contained any such stipulation.

If the plaintiff in the present action was seeking to recover the proceeds of the life insurance, the subject-matter of the litigation involved in Breen & Gardien Insurance Agency, Inc., et al. v. Lela J. Brasher, or to question the satisfaction of that decree by the delivery to her or to her representative—the defendant bank—of the "participations in loans," the contention of the defendant, appellee, would be sound and the authorities cited by it would be apt. Cowley v. Farrow et al., 193 Ala. 381, 69 So. 114.

But that is not the case presented here. This suit is to recover the damages suffered by the plaintiff in consequence of the fraud and deceit practiced upon her by defendant, in not disclosing to her, as it was its duty to do in the circumstances, the contents and nature of said decree—the fact that it allowed the defendant to deliver to the plaintiff or to itself as plaintiff's representative and adviser, said depreciated securities in lieu of the money ascertained to be the plaintiff's property.

■ The decree—being wholly by consent—under our decisions partakes of the nature of a contract, and is not "strictly speaking, res judicata." Cowley v. Far-

row et al., 193 Ala. 381, 69 So. 114; Carr v. Illinois Central R. Co., 180 Ala. 159, 60 So. 277, 43 L.R.A.(N.S.) 634. A consent decree is no more solemn or sacred than a solemn contract entered into between contracting parties, and previous rescission or vacation of the decree is not a prerequisite to the right to sue for fraud and deceit in procuring its rendition. Maxwell v. Sherman, 172 Ala. 626, 55 So. 520; Stewart v. Riley & Johnson, 189 Ala. 519, 66 So. 488.

No one questions the soundness of the doctrine of "the finality of judgments and decrees," but that doctrine is limited to the parties to the suit in which such judgment or decree was rendered and confined to the matters within the scope of the issues in the proceeding.

As observed by Stone, Justice, in Gilbreath v. Jones, 66 Ala. 129, 132, "In the opinion of the judges, given in the Duchess of Kingston's Case (2 Smith Lead.Cas. [7th Ed.] 609 [573]), is the following language, given as the result of the numerous decisions, relative to judgments being given in evidence in civil suits: 'That the judgment of a court of concurrent jurisdiction, directly upon the point, is, as a plea, a bar, or as evidence conclusive, between the same parties, upon the same matter, directly in question in another court.' It can not be overlooked, that this language lays down a strict rule; yet, it is supported alike by reason and authority. The parties must be the same, the subject-matter the same, the point must be directly in question, and the judgment must be rendered on that point. Any of these ingredients wanting, the defense fails. The sentence quoted above has been adopted, both by text-writers and judicial tribunals, and has come to be recognized as a judicial axiom." To the same effect, Hall & Farley v. Alabama Terminal & Improvement Co., 173 Ala. 398, 56 So. 235. See, also, 9 Enc.Digest of Ala.Rep. pages 168, 169; Fuller v. Whitlock, 99 Ala. 411, 13 So. 80; McGilvary et al. v. Reynolds et al., 224 Ala. 435, 140 So. 417; Hayes et al. v. First Joint Stock Land Bank et al. (Miss.) 165 So. 605.

Under the facts alleged in the complaint, the plaintiff was defendant's client, and the defendant was her representative and confidential adviser, and even though the defendant was a party complainant in said equity suit, as asserted in briefs, it cannot cloak behind said decree, for the simple reason that the confidential relation between the plaintiff and defendant and the duties arising therefrom were not within the scope of said proceeding, and the question of defendant's infidelity and fraud, the basis of this action, was foreign to the equity suit. There was no adjudication or agreement in respect to such fraud; nor was there any contest or contention as to the amount of money to which the plaintiff was entitled.

It is familiar law that an agent may represent two antagonistic interests or principals, but in such situation he must disclose fully to both his relation. Girard Fire & Marine Ins. Co. et al. v. Gunn, 221 Ala. 654, 130 So. 180.

So, if the defendant was one of the complainants in the equity suit, before undertaking to advise and represent the plaintiff in respect to consenting to said decree, it was under duty, not only to disclose the contents and legal effect of the decree, but that the said participations were its property, and that it was an antagonist of the plaintiff. This is nothing but common honesty, and courts of justice will not look for naked technicalities and mere sentimentalism as to shield one who has by fraud and deceit inflicted damage on another. Code 1923, § 5676; Williams et al. v. Bedenbaugh, 215 Ala. 200, 110 So. 286.

Application overruled.

ANDERSON, C. J., and THOMAS, FOSTER, and KNIGHT, JJ., concur.

BOULDIN, Justice (dissenting).

No proposition is more firmly established, nor based on more fundamental principles of sound policy, than the finality of judgments and decrees.

If the court has general jurisdiction to entertain the cause, has jurisdiction of the particular subject-matter, and of the parties, and renders such a decree as it has jurisdiction to render, it is conclusive and binding on all the parties unless it is reversed or vacated in some direct proceeding recognized in law or equity. It cannot be collaterally assailed. To do so is to simply get a judgment in one court contradicting and destroying that of another court of competent jurisdiction.

Under the facts clearly disclosed in the opinion of Justice BROWN, the parties to

the suit in which the decree was rendered were, in the first instance, the creditors of plaintiff's deceased husband as complainants, and this plaintiff, the wife of the deceased debtor, as party respondent. The issue between them was, Who, in equity, should be decreed certain life insurance funds, the husband's creditors or the surviving wife?

The defendant bank was appointed receiver of such fund to hold it as an arm of the court, indifferent as receiver, to the results as between the litigants. But that litigation ended in a decree awarding the creditors a portion and the wife a portion.

Then came the matter of settling the receivership. The receiver and all parties are in court for such purpose. The subject-matter was in court by its own decrees, a receivership ancillary to the main suit. If notice of a settlement of the receivership was required, this was waived when the parties came into court with a consent decree.

Thereupon, probably at the same time and along with the decree adjusting the equities between the parties, a consent decree was entered whereby plaintiff was decreed certain "participations" in loans in full satisfaction and discharge of her claim to the funds in the hands of the receiver, thus decreeing that the receiver be discharged of all further liability to this plaintiff.

This decree, the court, with consent of the parties, had jurisdiction to make. It was entirely distinct and severable from the decree adjusting equities in the main suit.

The present suit at law is an action for damages for fraud in procuring plaintiff's consent to such settlement and the entry of such decree.

In my view it is necessarily a collateral attack on the decree in equity. That decree adjudicated that what plaintiff took under the decree was in full of her interest in the funds in the hands of the receiver.

The fact that the decree was rendered by consent does not warrant such attack. A careful study of Adler et al. v. Van Kirk Land & Construction Co., 114 Ala. 551, 21 So. 490, 493, 62 Am.St.Rep. 133, Carr v. Illinois Central R. Co., 180 Ala. 159, 60 So. 277, 43 L.R.A.(N.S.) 634, and Cowley v. Farrow et al., 193 Ala. 381, 69 So. 114, will disclose they support this view.

The case of Adler et al. v. Van Kirk Land & Construction Co., supra, was a bill of review or a bill in the nature of a bill of review to vacate a consent decree. Said the court:

"The fact that the decree in the foreclosure suit was rendered by consent of parties does not, therefore, detract from its dignity, or lessen its conclusiveness, as an adjudication between the parties. Not only is such its effect, but the consent is a waiver of error, precluding a review of the decree upon appeal, and, as a general rule, upon a bill of review. Thompson v. Maxwell [Land Grant & R. Co.], 95 U.S. 391, [24 L.Ed. 481]; Nashville, etc., R. Co. v. United States, 113 U.S. [261] 266, 5 S.Ct. 460 [28 L.Ed. 971]; 2 Dan.Ch.Pl.&Pr.(5th Am.Ed.) p. 1576; Dunman v. Hartwell [9 Tex. 495], 60 Am.Dec. 176; Curry v. Peebles, 83 Ala. [225] 227, 3 So. 622."

Cowley v. Farrow et al., supra, was a bill to cancel certain mortgages given in pursuance of a consent decree. The court said:

"It was a decree, however, and though to some extent it may be deemed to partake of the character of an act of the parties, and hence not strictly res judicata (the point to which the authorities were cited in Carr v. Illinois Central R. Co. [180 Ala. 159, 60 So. 277, 43 L.R.A.(N.S.) 634]), still it was such an act, to use the language of Judge Freeman, that it must be 'regarded as in the nature of a contract or binding obligation between the parties thereto, which neither, in absence of fraud or mistake, has the right to set aside or disregard, and which as against each is a waiver of errors and irregularities.' Judgments, § 330. Decrees by consent and decrees after argument are identical in this respect; they are open to direct attack only; and the causes of their invalidity must be specifically stated.

"In Adler v. Van Kirk Land Co., supra, Chief Justice Brickell said of a bill seeking to impeach a consent decree for fraud: 'To give equity to such a bill it must be clearly shown that the decree, or the consent upon which it was based, was procured by fraud; that the fraud was practiced in the act of obtaining the decree or the consent therefor.'

"In short, a consent decree may be assailed through the consent upon which it is based. This is the principle that was ap-

plied in Carr v. Illinois Centrol R. Co., supra." 193 Ala. 381, 384, 69 So. 114, 115.

This case, in keeping with the Adler Case, clearly recognizes that if the consent is procured by fraud, such fraud entered into the decree, and is ground for direct attack on the decree by bill in the nature of a bill of review. Confidential relations may, as of course, enter into the question of fraud in procuring such consent.

The averments of this complaint would be entirely pertinent in a bill of that sort. Curry v. Peebles, 83 Ala. 225, 3 So. 622.

Carr v. Illinois Central R. Co., supra, was a direct attack by bill in equity, and the entire argument, as stated in Cowley v. Farrow et al., was to demonstrate that such a bill lies.

Even in proceedings in rem where jurisdiction appears on the face of the record, the remedy against fraud in invoking such jurisdiction is by direct attack through bill in the nature of a bill of review. Williams v. Overcast et al., 229 Ala. 119, 123, 155 So. 543; Keenum et al. v. Dodson et al., 212 Ala. 146, 102 So. 230; Quick et al. v. McDonald et al., 214 Ala. 587, 108 So. 529.

In an adversary proceeding, where the parties are proceeding at arm's length, strict rules are applied touching diligence, etc. Where confidential relations exist wherein the one party owes a duty to conserve the interest of the other, and such confidence is betrayed, and a fraud perpetrated, courts of equity are swift to grant relief even though the fraud was consummated by a consent decree. But none of these cases holds such decree can be ignored, and a suit at law brought for damages just as if no such decree existed.

The decree adjudicated that the properties accepted in lieu of money should be in full satisfaction of plaintiff's claim against the receiver, discharging him from further personal obligation, as well as obligation on the receiver's bond.

Plaintiff's remedy, if the averments of the complaint are true, is by bill in the nature of a bill of review.

I respectfully dissent.

GARDNER, J., concurs in the foregoing dissent.