105 So.2d 668

G. H. CLARK et al.

v.

M. E. McGINN et al., d/b/a A. D. Harper Lumber Company.

4 Div. 952.

Supreme Court of Alabama.

Oct. 9, 1958.

Fleming & Stephens, Elba, for appellants.

C. L. Rowe, Elba, for appellees.

GOODWYN, Justice.

This is an appeal by two of the respondents from a decree of the circuit court of Coffee County, in equity, overruling their demurrer to appellees' bill of complaint.

The bill alleges, to the extent here important, the following:

On August 8, 1950, respondent C. & S. Lumber Company, Inc., a corporation, and complainants (M. E. and M. L. McGinn, partners doing business as A. D. Harper Lumber Company, a partnership) entered into a written contract under the terms of which complainants became said corporation's "sole and exclusive factor and selling agent for the sale of lumber then on hand and thereafter to be manufactured by the said respondent corporation at an agreed commission per thousand feet on all lumber sold." The contract provides for advancement by complainants to respondent corporation of $40 per 1,000 feet for lumber manufactured or purchased by it and stacked on its yard at Elba, Alabama, up to $25,000, with complainants' right, at their discretion, to increase both the amount to be advanced per 1,000 feet and the total amount. On December 11, 1951, while the above contract was in full force and effect, respondents G. H. and Mrs. Ruby B. Clark, "then being owners of the principal amount of the capital stock of the respondent corporation," executed, "in their capacity as individuals", to complainants "a guaranty contract", a copy of which is exhibited to the bill of complaint, marked as Exhibit 1 thereto and made a part thereof. Said guaranty contract, to the extent here pertinent, provides as follows:

"Know All Men By These Presents, That Whereas C. & S. Lumber Company, Elba, Alabama, is engaged in doing a lumber and financing business with the A. D. Harper Lumber Company of Montgomery by which at times it becomes indebted to said A. D. Harper Lumber Company, and being also engaged in borrowing money with

or without giving its notes as evidence thereof, and also discounting with said A. D. Harper Lumber Company its customers' notes or accounts with its endorsement and otherwise becoming indebted to said A. D. Harper Lumber Company and it being desired that all of the indebtedness which said C. & S. Lumber Company, Inc., may at present or hereafter from time to time owe or be liable for, to the said A. D. Harper Lumber Company, shall be secured by the individual liability and responsibility of each of the undersigned and the undersigned individually, being willing and desirous of securing said A. D. Harper Lumber Company and it being to their interest to do so.

"Now Therefore, in consideration of the premises and of One Dollar to each of the undersigned in hand paid by A. D. Harper Lumber Company and other valuable consideration we, the undersigned do hereby agree and bind ourselves to be liable for, and we do hereby promise to pay at maturity, any and all indebtedness and liability of every kind and character which the said C. & S. Lumber Company, Inc., may now or hereafter from time to time owe the said A. D. Harper Lumber Company until this agreement is revoked, it being understood, however, that our liability at any one time from said indebtedness shall not exceed, in the aggregate, the sum of Fifty Thousand ($50,000.00) Dollars.

"Should we fail to pay any of said obligations or liabilities at their respective maturities, then at the option of the said A. D. Harper Lumber Company, all such obligations and liabilities shall immediately become due and payable. The object, purpose and intent of this instrument is to make the undersigned liable to said A. D. Harper Lumber Company for all of the indebtedness and liabilities above mentioned in all respects as if they were original makers of said obligations. This instrument shall be construed as an absolute guarantee, and there shall be no duty or obligation resting on said A. D. Harper Lumber Company to proceed against C. & S. Lumber Company, Inc., for the collection of the indebtedness hereinabove referred to, or the collateral deposited or pledged as security before proceeding against us."

On August 1, 1953, the respondent corporation executed to complainants "its note secured by a contractual pledge or equitable chattel mortgage in the principal sum of $38,789.52," it being alleged that when said instrument was executed the two above mentioned contracts were in full force and effect, the respondent corporation was indebted to complainants in said sum of $38,789.52 and "the respondents Clark were liable to said partnership [complainants] for said sum (Exhibit 1)." And it is alleged 'that at all times since the date of said chattel mortgage and note to and including the filing of this bill of complaint the respondents Clark, in their capacity as individuals, have been and are liable to the said partnership [complainants] for the balance due under said chattel mortgage and note by virtue of said guaranty contract"; "that there was justly due and unpaid upon said chattel mortgage and note as of 28 February 1957 the sum of $33,329.09," on which there was a payment of $800 made on April 11, 1957, and that said sum less said $800 credit, with interest thereon, is past due and unpaid. It is further alleged that respondent corporation has disposed of all of the chattels conveyed in said chattel mortgage, except certain items listed in the bill; that said remaining items are in possession of respondent corporation at Elba, Alabama; that said corporation has ceased to do business, has liquidated all of its assets except the listed items, upon which complainants' chattel mortgage is a first lien; that respondent corporation is insolvent; that a writ of seizure ought to be issued "to seize said assets mentioned next above still in the hands of said corporation upon which the said chattel mortgage is a first lien, by reason

of the fact that the said chattels are in danger of being wasted, carried beyond the jurisdiction of the court or otherwise disposed of; that the same ought to be seized in order that they may be available for sale under foreclosure of said chattel mortgage, as herein prayed for"; that complainants "are entitled to decree of this court ascertaining the amount of the chattel mortgage indebtedness, together with interest * * * and solicitor's fees * * *"; that "they are entitled to have the chattels sold and the net amount of the proceeds of said sale, over and above court cost, expenses of sale and solicitor's fees, applied to the chattel mortgage indebtedness so ascertained by the court; and that they are entitled to a deficiency decree against respondents G. H. Clark and Mrs. Ruby B. Clark, separately and severally, as guarantors of the indebtedness of the respondent corporation, in the event the said chattels covered by said chattel mortgage are not sold for an amount sufficient to pay off the balance due on the said chattel mortgage and the expenses of sale."

The bill prays that a writ of seizure be issued to the end that the chattels in possession of respondent corporation, as listed in the bill of complaint, be "seized and held pending orders of this court foreclosing the chattel mortgage * * * or that said seizing officer deliver the same to the parties upon posting bond as the court may direct"; that the court "ascertain the amount now due by respondent corporation upon said chattel mortgage", including interest and a solicitor's fee, and "order the foreclosure of the said chattel mortgage upon the chattels now in possession of said respondent corporation and taken under said writ of seizure and order the said chattels sold" by the register and "from the proceeds of said sale that there be paid the cost in the cause and the expenses of sale, including a reasonable solicitor's fee." It is further prayed "that the court may decree and declare that the respondents G. H. Clark and Mrs. Ruby B. Clark, separately and severally, are liable to the complainants under the terms of the guaranty contract

* * * to the extent that the net proceeds of the sale of said chattels under foreclosure decree are insufficient to pay the cost of this cause, the expenses of sale and the amount ascertained to be due by said respondent corporation on said chattel mortgage; and that deficiency decree be entered against G. H. Clark and Mrs. Ruby B. Clark, separately and severally, in favor of the complainants to the extent that the proceeds of the foreclosure sale of said chattels are insufficient to pay the chattel mortgage indebtedness so ascertained by the court." There is also a prayer for general relief.

The demurrer of the respondents Clark contains seven grounds. Grounds 1, 2, and 3 go to the general equity of the bill. Grounds 4 through 7 challenge the sufficiency of the bill in alleging a consideration for the guaranty agreement.

■■■ The trial court, in overruling the demurrer, rendered the following opinion giving the reasons for its ruling:

"* * * The appropriate demurrer takes the position that the bill does not allege consideration for the guaranty agreement alleged to have been executed by these respondents.

"It is recognized, in cases of this kind, that where one not a party to the original transaction, who in pursuance of some subsequent arrangement, signs an instrument as surety, guarantor or indorser after the original contract has been fully executed and delivered, without agreement at time of the execution of the original contract that additional surety would be furnished, is a new and independent contract, and to be binding must be supported by a new consideration, independent from that of the original contract. McMillan v. Dozier [257 Ala. 435], 59 So.2d 563.

"In this case the guaranty agreement is in writing, attached to the bill by exhibit and made a part thereof. A portion of said agreement is as follows: 'In consideration of the premises, and

'of One Dollar to each of the undersigned in hand paid by A. D. Harper Lumber Company, and other valuable considerations, we, the undersigned, agree', etc. Thus it appears that the contracts sued on purports on its face to have been made for a valuable consideration. Where a contract of guaranty for the payment of debts purports on its face to have been made for a valuable consideration, and the complaint sets out the contract in full, that is a sufficient allegation of consideration. Leftkovitz v. First National Bank of Gadsden, 152 Ala. 521 [44 So. 613].

"It will be noted, however, that the consideration enumerated is merely nominal. The question then arises whether nominal consideration recited is sufficient. In the case of Shows v. Steiner, Lobman & Frank, 175 Ala. 363 [57 So. 700], the Court quoted from the case of Davis v. Wells, 104 U.S. [159] 167 [26 L.Ed. 686], as follows:

" 'It is not material that the expressed consideration is nominal. That point was made, as to a guarantee, substantially the same as this, in the case of Lawrence v. McCalmont, 2 How. 426, 452, 11 L.Ed. 326, and was overruled. Mr. Justice Story said: "The guarantor acknowledged the receipt of the $1, and is now estopped to deny it. If she has not received it, she would now be entitled to recover it. A valuable consideration, however small or nominal, if given or stipulated for in good faith, is, in the absence of fraud, sufficient to support an action on any parol contract; and this is equally true as to contracts of guaranty or as to other contracts. A stipulation in consideration of $1 is just as effectual and valuable a consideration as a larger sum stipulated for or paid".' "

It is apparent that the trial court, in overruling the demurrer, considered only those grounds (4 through 7) going to the sufficiency of the bill in alleging a consideration for the guaranty agreement. In this situation, those are the only grounds presented for review on this appeal. City of Decatur v. Southern R. Co., 183 Ala. 531(1), 532–533, 62 So. 855, 48 L.R.A.,N.S., 231.

It seems to us that the trial court's opinion adequately answers the question as to whether the bill sufficiently alleges a consideration for the guaranty agreement.

Affirmed.

LAWSON, SIMPSON and MERRILL, JJ., concur.