The plaintiff, Richard Baylor, appeals from a summary judgment in favor of Thomas W. Jordan, William M. Richardson, and First Montgomery Bank. The gist of Baylor's complaint was that the defendants fraudulently induced him to sell certain securities for less than their fair market value.
Baylor and Jordan were close personal friends who engaged in various business ventures together for about ten years prior to the events complained of. They had formed a corporation, Furniture Town, Inc., which was engaged in the business of selling furniture on credit. Baylor and Jordan each owned fifty percent of the outstanding shares of the corporation. Both were directors and officers. Baylor ran the day-to-day business of the corporation.
In order to finance the furniture store, Baylor and Jordan borrowed money from First Montgomery Bank. The loans were secured by Furniture Town's accounts receivable. Richardson, the president of First Montgomery, dealt with both Baylor and Jordan on behalf of the bank. For service of the loans, Furniture Town furnished Richardson with monthly financial statements detailing the store's operation.
Baylor was working long hours at the store and he became dissatisfied with Jordan's limited participation in the business. According to Baylor's testimony in his deposition, he approached Richardson and requested a loan to enable him to buy Jordan's interest. Richardson allegedly told Baylor that the bank "could not make loans on that type of business."
Since he was unwilling to continue in the business with Jordan, Baylor met with Jordan and offered to buy Jordan's shares for $50,000.00. According to Baylor, that price was arrived at on an "individual basis," that is, what either Baylor or Jordan individually could raise to buy out the other.
The offer came as a somewhat of a surprise to Jordan and he asked for some time to think about it. Later the same day they discussed their differences again. Baylor was firm in his opinion that their business relationship needed to be dissolved. Baylor testified in his deposition that when they met the next day Jordan stated that, since they had "known each other so long, wouldn't it only be fair that if you made the offer to buy, that you would give me the same offer to buy?" Despite the fact that a sale of the business's tangible assets would have netted Baylor and Jordan $75,000.00 to $80,000.00 each, Baylor agreed to sell his shares to Jordan for $50,000.00 because of their "close relationship."
The next day Jordan purchased Baylor's shares for $50,000.00. Unknown to Baylor, Jordan had entered into an agreement with Richardson (acting in his own behalf) whereby Jordan agreed to convey fifty percent of the outstanding shares of Furniture Town to Richardson in exchange for financing arranged by Richardson which was used to purchase Baylor's shares. *Page 256 
It is undisputed that Jordan made no material misrepresentations of material fact in connection with the transaction. Baylor contended, however, that Jordan and Richardson had a duty to disclose Richardson's role in the transaction, because the price was arrived at on an "individual basis" between Jordan and Baylor. Baylor claimed that, had he known that a third party was involved, he would not have sold his shares for less than their fair market value. He conceded that, as a general rule, a purchaser of securities is under no obligation to disclose that he is acting on behalf of an undisclosed principal. Baylor argued that in this case, however, an obligation to disclose arose out of the confidential relations of the parties or the particular circumstances of the case. Section 6-5-102, Code of Alabama.
Baylor argued that Jordan owed him a fiduciary duty because Jordan was an officer and a director of the corporation and because of their close, personal relationship. Baylor's argument overlooks the fact that Jordan was not dealing with Baylor in his capacity as an officer or director. They were dealing with each other as shareholders. We have recognized a duty on the part of majority shareholders to act fairly to minority stockholders. See Burt v. Burt Boiler Works,360 So.2d 327 (Ala. 1978). We know of no authority, however, to support a proposition that when two shareholders who possess equal knowledge of the material facts and have relatively equal bargaining power and business acumen buy and sell securities they stand in a confidential relationship to one another. It is true that when two old friends are dealing with each other there might be a tendency to be less cautious than strangers who transact business with each other. The totality of the facts, even when viewed most favorably toward Baylor, do not, however, support his contention that Richardson's role was a material fact which Jordan had a duty to disclose. It was Baylor who decided that they should terminate their business relationship. He suggested the price of $50,000.00, knowing that that amount represented less than one-half the net value of the corporation's assets. Even though he alleged that the offer was made on an "individual basis," he admitted in his deposition that "neither one of us had that much money" and acknowledged that he knew at the time that whoever bought the other out would have to arrange some sort of financing. Finally, there were no restrictions on further sales of the stock. Once he owned Baylor's shares, Jordan was free to sell as many of the shares as he saw fit at whatever price he could obtain.
Baylor also argued that under the circumstances of this case we should recognize a fiduciary relationship between the bank and Baylor. Courts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship which does not impose a fiduciary duty of disclosure on the bank. A fiduciary duty may arise when the customer reposes trust in a bank and relies on the bank for financial advice, or in other special circumstances. SeeBrasher v. First National Bank of Birmingham, 232 Ala. 340,168 So. 42 (1936); Annot., "Bank as Fiduciary — Duty of Disclosure," 70 A.L.R.3d 1344 (1976).
There were no allegations that Baylor placed trust and confidence in the bank or that he relied on Richardson to counsel him. Nor do we opine that other special circumstances exist here which would warrant a fiduciary duty on the part of the bank to disclose. This is not a situation where a party with superior knowledge acted to the detriment of a party in an inferior position. There was no weakness of age, no lack of mental strength, and no absence of business intelligence. The plaintiff was a sophisticated businessman accustomed to buying and selling securities.
 Baylor relies heavily on several cases involving appropriation by loan officers of opportunities for which prospective borrowers sought financing. Dolton v. Capitol Federal Savings and Loan Ass'n, Colo.App., 642 P.2d 21 (1982); Warsofsky v. Sherman, 326 Mass. 290, 93 N.E.2d 612 *Page 257 
(1950); Pigg v. Robertson, 549 S.W.2d 597 (Mo.App. 1977). In each case the plaintiff desired to purchase certain property. He went to a bank in an attempt to seek financing and in connection with the loan application disclosed details of the proposed transaction to the loan officer. In each case the loan officer purchased the property for which the customer sought financing. Each case stated a claim for equitable or other appropriate relief on the theory that a loan officer should not be allowed to use information provided in confidence to the detriment of the customer who disclosed the information.
The cases cited by the plaintiff are distinguishable from the case at bar. Here the loan officer did not purchase the property which Baylor sought to buy. Richardson cannot be said to have appropriated an opportunity for which Baylor sought financing, since Baylor was the seller, not the buyer. Nor was there any misuse of confidential information supplied by Baylor to Richardson. Richardson learned that Baylor had agreed to sell when Jordan approached Richardson with the idea of buying Baylor's shares. There was no information supplied by Baylor in connection with his loan application which was employed by Richardson in deciding to buy.
It is undisputed that the idea of terminating Baylor's and Jordan's business relationship originated with Baylor. Jordan purchased the shares on terms proposed by and agreed on by Baylor. He acquired financing through Richardson much in the same way that Baylor had sought to do. All three were sophisticated, intelligent businessmen who knew the true value of what they were buying and selling. Although he knew that Jordan had to acquire some sort of financing to enable him to make the purchase, Baylor never inquired as to his source of funds. Under those facts Baylor cannot now be heard to complain that he was the victim of fraudulent concealment by the defendants.
AFFIRMED.
TORBERT, C.J., and JONES, EMBRY and ADAMS, JJ., concur.