This case involves a suit on a guaranty agreement. We affirm in part and reverse in part.
SouthTrust Bank of the Quad Cities sued Oscar Medley on a guaranty contract executed by him to Muscle Shoals National Bank (now SouthTrust) on May 2, 1979, guaranteeing the debts of his son, Roy Medley, d/b/a Medley Company. This case was instituted as a result of Medley Company's default under the terms of several promissory notes, which are allegedly covered by the guaranty agreement executed by Oscar Medley. The guaranty agreement is an absolute, continuing guaranty which, by its terms, can be revoked only by written notice to the bank.
The facts are as follows: In 1971, Roy Medley formed a sole proprietorship called Medley Company. Muscle Shoals National Bank made loans to Medley Company. On May 2, 1979, Oscar Medley, *Page 1077 
Roy's father, executed to Muscle Shoals National Bank an agreement guaranteeing the debts of Roy Medley, d/b/a Medley 
Company. The bank continued making loans to the business.
On January 1, 1981, Roy Medley formed a partnership with James M. Thompson. During the latter part of 1981, Muscle Shoals National Bank merged with Southern Bank of Lauderdale County, and the name of the bank was changed to South-Trust Bank of the Quad Cities. Thereafter, the partnership (under the name Medley Company) had the old debts of Medley Company, owed to Muscle Shoals National Bank (now SouthTrust), refinanced.
In April 1983, when the partnership was terminated, Roy Medley and James Thompson agreed that Roy would assume all liabilities of the partnership. Shortly thereafter, all notes of Medley Company owed to SouthTrust were consolidated into one note. It is this note and three others, all loans to Medley Company, executed during the years 1983 and 1984, that are the subject of this action.
Throughout the collection proceedings, Oscar Medley (hereinafter referred to as Medley) has maintained that he has no recollection of executing the guaranty agreement, although he acknowledges that the signature on the document is his own. He defends on the grounds of fraud, estoppel, novation, failure of consideration, release, and statute of limitations. Further, he counterclaimed against SouthTrust for misrepresentation, arguing that the bank had a duty to disclose the nature of the instrument and that, because of the bank's failure to properly advise him, he was misled into signing the document. This counterclaim was disposed of by summary judgment in favor of SouthTrust.
Medley filed a motion for summary judgment, contending that the guaranty agreement was void for lack of consideration. The trial court denied Medley's motion. After a trial, the trial court directed a verdict in favor of SouthTrust and against Medley.
From the final judgment, embracing these three rulings, Oscar Medley appeals.
 MEDLEY'S LACK OF CONSIDERATION CLAIM
Medley submits that the guaranty agreement sued upon is void for lack of consideration and, thus, that the trial court erred by not granting his motion for summary judgment or, in the alternative, his motion for a directed verdict. Medley contends that there is no consideration because the guaranty sued upon 1) included pre-existing debts, 2) was not made contemporaneously with any loan, and 3) contained no expression of new valuable consideration. SouthTrust, on the other hand, argues that its promise of future advances constitutes sufficient consideration.
That portion of the guaranty agreement here contested contains the following language:
 "WHEREAS, the undersigned (if more than one, the undersigned jointly and severally) have requested THE MUSCLE SHOALS NATIONAL BANK (hereinafter referred to as the Bank) to extend credit from time to time to
 Roy D. Medley d/b/a Medley Co. (hereinafter referred to as the debtor), and have agreed to guarantee the payment when due of all such credits, and also of all other indebtedness of every kind and character now or at any time hereafter (before revocation hereof) owing by the debtor to the Bank; and
 "WHEREAS, the Bank is willing to extend such credit to the debtor from time to time as, in the Bank's discretion, is prudent and wise, provided this instrument of guaranty is executed to the Bank.
 "NOW, THEREFORE, in consideration of the premises, and in order to induce the Bank to extend to the debtor from time to time in the future as requested by the debtor, such loans, extensions of loans and forbearances as to the Bank may seem prudent and wise, the undersigned *Page 1078 
(if more than one, the undersigned jointly and severally) guarantee(s) the prompt payment on demand of the principal of and interest on any indebtedness of the debtor now, or at any time hereafter, outstanding, and any and all renewals thereof, together with all costs of collection, including a reasonable attorney's fee, as may be provided for in the face of any and all notes heretofore taken, or hereafter executed by the debtor, evidencing any such indebtedness, or any part thereof."
It is true that when someone not a party to the original transaction signs an instrument as guarantor after the original contract has been duly executed and delivered, without agreement at the time of the execution of the original contract that additional security would be furnished, he is entering a new and independent contract; and, to be binding, this agreement must be supported by consideration, independent of the original contract. Clark v. McGinn, 268 Ala. 252, 255,105 So.2d 668, 671 (1958).
When dealing with a guarantee of a preexisting debt, consideration is essential to sustain the obligation. Zadek v.Forcheimer, 16 Ala. App. 347, 348, 77 So. 941 (1918). In the instant case, however, the guaranty agreement is not limited solely to pre-existing debts. Rather, it covers the "indebtedness of debtor now, or at any time hereafter, . . . and any and all renewals thereof. . . ." In other words, Medley agreed to guarantee all of his son's past and future indebtedness to SouthTrust.
This Court has repeatedly held that the promise of extension of credit in the future to the principal debtor is good consideration in a guaranty contract. Colonial Bank of Alabamav. Coker, 482 So.2d 286, 291-92 (Ala. 1985); Scharnagel v.Furst, 215 Ala. 528, 531, 112 So. 102 (1927); Lefkovits v.First National Bank of Gadsden, 152 Ala. 521, 530, 44 So. 613
(1907).
It is well established that when the terms of a contract are unambiguous, the contract's construction and legal effect become a question of law for the court, and, when appropriate, may be decided by summary judgment. Colonial Bank of Alabama v.Coker, 482 So.2d 286, 291 (Ala. 1985). The contract at issue here is not ambiguous insofar as the issue of consideration is concerned, nor has any such allegation been made. The contention that there was no consideration has been disproved by the undisputed fact that SouthTrust subsequently made loans to Medley Company (from May 1979 through the end of 1979), as contemplated by the guaranty agreement.
In reviewing the evidence available to the trial court when the motion for summary judgment was denied (Ex parte BagbyElevator Electric Co., 383 So.2d 173 (Ala. 1980)), we cannot say the trial court erred in denying Medley's motion for summary judgment. The promise of future extension of credit is good and valid consideration; thus, the guaranty agreement was not void for lack of consideration.
 THE MISREPRESENTATION CLAIM
Medley asserts the trial court erred in granting summary judgment on behalf of SouthTrust, on his counterclaim. That counterclaim was premised on allegations of fraud. Medley cites § 6-5-102 for the proposition that the suppression of a material fact is fraud, if the confidential relationship of the parties mandates disclosure of the material fact which was suppressed. He claims that SouthTrust, using its trust position in relation to him, breached its duty to make full disclosure, inducing him to sign the guaranty sued upon through concealment, misrepresentations, and suppression of material facts.
The guaranty contract here contested was in writing and signed by Medley. "The general rule of contract law is that when parties reduce their agreements to writing, the writing is the sole expositor of the transaction and the intention of the parties, in the absence of mistake or fraud or ambiguity."Gunnels v. Jimmerson, *Page 1079 331 So.2d 247, 250 (Ala. 1976). See, also, Whitehead v.Johnston, 467 So.2d 240, 243 (Ala. 1985); Sanders v. Sanders,425 So.2d 476, 478 (Ala.Civ.App. 1983). "[O]ne who has executed a written contract in ignorance of its contents cannot set up that ignorance to avoid the obligation absent fraud or misrepresentation." Waldrep v. Nosrat, 426 So.2d 822, 824
(Ala. 1983). See also, Gunnels v. Jimmerson, supra, at 250. Specifically, with regard to guaranty contracts, it has been held that the guarantor's claimed ignorance of the contents of a written guaranty contract executed by him in no way avoids his obligation thereunder in the absence of fraud or misrepresentation. Reichhold Chemicals, Inc. v. Replex Corp.,401 So.2d 96, 98 (Ala.Civ.App. 1981).
Thus, Medley's claimed ignorance of the contents of the guaranty agreement will not excuse his obligation under the contract unless he can show fraud or misrepresentation. Medley contends that SouthTrust had a duty of disclosure because of a confidential relationship that existed between them. InFaith, Hope Love, Inc. v. First Alabama Bank of TalladegaCo., 496 So.2d 708 (Ala. 1986), this Court restated the general principle that the relationship, between a bank and its customer is traditionally viewed as a creditor-debtor relationship which does not impose a fiduciary duty of disclosure on the bank.
We also pointed out in Faith, Hope Love, however, that a fiduciary duty may arise when the customer reposes trust in a bank and relies on the bank for financial advice, or in other special circumstances, quoting Baylor v. Jordan, 445 So.2d 254,256 (Ala. 1984); Bank of Red Bay v. King, 482 So.2d 274, 285
(Ala. 1985); Brasher v. First National Bank of Birmingham,232 Ala. 340, 344, 168 So. 42 (1936). Medley here argues that he falls within the exception to the general rule that there is no duty of disclosure on the part of the bank, because, he says, he had a close, confidential relationship with SouthTrust and regularly relied on the bank for business advice. Medley cites as authority Brasher v. First National Bank of Birmingham,supra.
Brasher is distinguishable. That case involved a widow who had employed the bank to advise and assist her in the probate of her husband's will and in the management of his estate, and to advise and assist her in the management, conservation, protection, and investment of her individual funds. The defendant in Brasher failed to disclose to the plaintiff the contents of a "consent decree" rendered by the circuit court in receivership proceedings and wrongfully represented to her that it would be in her interest to agree to the consent decree. This resulted in the plaintiff's receiving "participations" in loans, with little or no market value, in lieu of $81,758.23 — proceeds of insurance policies adjudged to be the property of the plaintiff — to the plaintiff's hurt and the defendant's gain. The widow's status in relation to the bank and her dependence on the bank's expertise are not comparable with Medley's relationship with SouthTrust.
In holding that a duty to communicate material facts may arise in a confidential relationship or in the presence of special circumstances, this Court has quoted, with approval, the following definition of "confidential relationship":
 " '[A relationship in which] one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all *Page 1080 
the variety of relations in which dominion may be exercised by one person over another.' "
Holdbrooks v. Central Bank of Alabama, 435 So.2d 1250
(Ala. 1983), quoting 15A C.J.S. Confidential (1967).
Medley failed to give evidence of special circumstances or a confidential relationship in his dealings with SouthTrust. There is evidence that he had previous dealings with the bank and often dropped by to chat with various bank officials, but this is not enough to amount to a special relationship in this case.
A suppression claim, based on Code 1975, § 6-5-102, requires that the party charging suppression prove that a material fact was suppressed. In a motion for summary judgment, once the movant has made a prima facie showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to show, by admissible evidence, the existence of a genuine issue of material fact. Rule 56(e), A.R.Civ.P., Hornerv. First National Bank of Mobile, 473 So.2d 1025,1028 (Ala. 1985). The material fact here claimed to have been suppressed is the guaranty agreement itself, which, Medley acknowledges, has his signature on it.
In reviewing a summary judgment, this Court looks to the same factors that the trial court initially considered in ruling on the motion. If there is any evidence presented to support the nonmoving party's position (here, Medley's) the summary judgment may not be granted. Chiniche v. Smith, 374 So.2d 872, 873
(Ala. 1979). Reviewing the facts available to the trial court when the motion was presented, we conclude that Medley has presented no evidence in support of his claim of fraud.
 THE ESTOPPEL CLAIM
Medley's third issue on appeal relates to his estoppel defense against SouthTrust. Medley asserts that SouthTrust's requirement that Medley sign numerous notes on his son's behalf, after the execution of the guarantee, misled Medley. In other words, Medley argues that there was no need for him to sign the notes if there was indeed a valid guaranty agreement in effect. To further support his estoppel claim, Medley alleges that once his son took on a partner in Medley Company, and Medley told SouthTrust he would no longer be responsible for his son's debts, SouthTrust never contacted him again (which it had regularly done prior to his notice). Medley urges this Court to reverse the trial court's grant of a directed verdict on this issue.
In General Electric Credit Corp. v. Strickland Division ofRebel Lumber Co., 437 So.2d 1240 (Ala. 1983), this Court listed the essential elements of equitable estoppel: "(1) The person against whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by words, conduct, or silence, with the intention that the communication will be acted on; (2) the person seeking to assert estoppel, who lacks knowledge of the facts, relies upon that communication; and (3) the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct." 437 So.2d 1240,1243.
Again, we must return to the fact that there was a written agreement, signed by Medley, to guarantee his son's business debts. The guaranty agreement contains a clause wherein the parties agreed that no notice need be given to the guarantor upon the extension or renewal of indebtedness.[1] And, as earlier stated, where a party, having *Page 1081 
the ability to read and understand an instrument, fails to do so and signs it without reading it, he is bound unless fraud was practiced upon him.Colburn v. Mid-State Homes, Inc., 289 Ala. 255, 266 So.2d 865
(1972). There being no evidence of fraud, Medley is bound on the contract. Viewing the entire evidence in a light most favorable to the nonmoving party (Medley), we find that the trial court properly granted the directed verdict in favor of SouthTrust on the issue of fraud.
 THE NOVATION CLAIM
Medley's last argument is that the trial court erred in granting a directed verdict because, he says, there is more than ample evidence that the refinancing of Medley Company's debts, after Roy Medley took on a partner, and again when the partnership reverted to a sole proprietorship, worked a novation and release of the guaranty agreement.
This Court has held that the following elements must be present in order to establish a novation: (1) there must have been a previous valid obligation; (2) there must be an agreement of the parties thereto to a new contract or obligation; (3) there must be an agreement that it is an extinguishment of the old contract or obligation; and (4) the new contract or obligation must be a valid one between the parties thereto. Warrior Drilling Engineering Co. v. King, 446 So.2d 31, 33 (Ala. 1984). InRestatement (Second) of Contracts § 280, p. 377 (1979), a novation is defined as "a substituted contract that includes as a party one who was neither the obligor nor the obligee of the original duty."
The question then is whether the refinancing of the sole proprietorship's debts by the newly formed partnership constituted a novation, releasing Medley from the guaranty agreement. Although the name and the nature of the business remained the same, a new entity was created; and there is evidence from the bank officials that the bank was aware that it was dealing with the newly formed partnership. It is fundamental that the liability of a guarantor will not be extended by implication beyond the terms of his contract. It matters not that he or she sustains no injury or even that it may be for his or her benefit. This Court has said that the guarantor "has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, it is fatal."Russell v. Garrett, 208 Ala. 92, 96-97, 93 So. 711 (1922),quoting Manatee County State Bank v. Weatherly, 144 Ala. 655,39 So. 988 (1905). See, also, Furst v. Shows, 215 Ala. 133,110 So. 299 (1926).
We emphasize that we have not found each of the elements of novation as a matter of law; but, as stated in Warrior Drilling Engineering Co. v. King, 446 So.2d 31, 34 (Ala. 1984), quoting from Placid Oil Co. v. Taylor, 325 So.2d 313, 316, 53 O. G.R. 477 (La.App. 1975):
 "The determining factor in deciding whether a novation has been effected is the intention of the parties. The intention to novate may be shown by the character of the transaction, and by the facts and circumstances surrounding it, as well as by the terms of the agreement itself."
Because a factual issue was presented with respect to the requisite elements of Medley's defense of novation, the trial court erred in granting a directed verdict on this issue. The evidence should have gone to the jury on the issue of novation.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and MADDOX, ADAMS and HOUSTON, JJ., concur.
ALMON and BEATTY, JJ., concur in the result.
SHORES and STEAGALL, JJ., dissent.
[1] The relevant provision in the guaranty agreement provides:
 "The undersigned further agrees . . . that, in the event the Bank grants to the debtor one or more extensions or renewals of any such indebtedness, or any part thereof, on any terms which may be acceptable to the Bank, with or without notice to the undersigned, that this guaranty shall, and is hereby made to extend to and cover such extended or renewed indebtedness, on whatever terms and conditions the same may be extended or renewed, and without regard to the number of times the same may have been or shall be extended or renewed."