Esker Davis, Jr., decided to sell his 3,000-plus acres of land in Pike and Bullock Counties. He contacted Truman Jones, a real estate agent, and listed the property with his agency. Jones contacted J.W. Casey, who expressed interest in purchasing the land. Jones, Casey, and Davis met on the property, which was the only time Casey and Davis met. Davis told Casey that he wanted to reserve the right to hunt on the property for himself and his sons. Casey consented. Thereafter, Casey offered to pay $1,750,000 for the property. Davis countered with an offer to accept $2,100,000. They finally agreed on a price of $2,000,000.
The listing agreement was prepared by Davis or his attorney; the contract was prepared by Davis's attorney; Davis furnished the title insurance policy; and the deed was prepared by his attorney. None of these documents contained any reservation of hunting rights, although the contract reserved a right of way in favor of some of the Davis family, and the deed reserved fishing rights for Davis's mother, who had reserved them by deed when Davis and his brother bought the property from her.
The disagreement between these parties concerns the nature of the hunting rights. Davis contends that he intended to reserve the exclusive right to hunt. Casey contends he has honored the agreement in that he extended to Davis and his family the right to hunt as long as he owned the land, and when he leased the hunting rights to a third party, he expressly provided that Davis and his sons had the right to hunt.
The closing took place on July 20, 1981. Davis executed the deed, which was prepared by his attorney, who was present at the closing. Casey was not present, but was represented by an attorney. The deed did not contain a reservation of hunting rights, but did reserve Davis's mother's fishing rights. When Casey agreed to sell the property to Willman Timberlands, Inc., Davis's lawyers attempted to insert a reservation of hunting rights in favor of Davis in the deed from Casey to Willman. When that failed, Davis filed this lawsuit in September 1982, against Casey and Jones, alleging breach of contract and fraud. The gravamen of Davis's claim is that Casey and Jones promised him he would have hunting rights and breached that promise. Alternatively, he argues that Casey and Jones fraudulently misrepresented that Davis would have such rights, thus entitling him to damages in tort.
Casey and Jones contend that there was no breach of contract and no fraud or misrepresentation. They assert that if the agreement was that Davis would retain the exclusive hunting rights, this agreement is void as violative of the statute of frauds, § 8-9-2, Ala. Code 1975. In this they are correct, because hunting rights are property rights, or profits a prendre, which may *Page 287 
be acquired only by grant or lease from the owner of land. See 38 C.J.S. Game § 4 (1943). However, we need not belabor this point inasmuch as only the fraud claim is before us.
To this charge, Casey and Davis deny any misrepresentation and point out that Davis's failure to retain the hunting rights was the result of his or his attorney's failure to include a reservation of those rights in the deed. They also argue that if fraud is assumed, the statute of limitations has run on this claim, because the complaint shows on its face that Davis either knew or should have known when he executed the deed that he did not reserve such rights. We agree. The record is clear that Davis knew that the hunting rights which he now contends he was promised by Casey or Jones or both were subject to reservation in writing. He reserved his mother's fishing rights in this way. He was experienced in real estate matters and was represented by his own attorney throughout these negotiations. It is true that § 6-2-3, Ala. Code 1975, provides that the statute of limitations for fraud actions does not begin to run until the plaintiff discovers the facts constituting fraud. We have consistently held, however, that this means the discovery of such facts as would put a reasonable person on inquiry which, if pursued, would lead to discovery of the fraud.Papastefan v. B L Construction Co., 385 So.2d 966 (Ala. 1980). If Davis believed, as he now asserts, that Casey was to convey the hunting rights by separate instrument — although there is no evidence to support such a belief — he surely knew he had not done so when the transaction was closed in the presence of attorneys representing both the buyer and the seller. He signed the deed and accepted a check from Casey. If these facts are subject to an inference that Casey or Jones was guilty of fraud or misrepresentation, Davis was sufficiently apprised of the fraud at the closing to commence the running of the statute of limitations. Kelly v. Smith, 454 So.2d 1315
(Ala. 1984); Gonzales v. U-J Chevrolet Co., 451 So.2d 244 (Ala. 1984).
We hold that the fraud claim is barred by the statute of limitations, and, thus, the trial court erred in denying the defendants' motions for directed verdict on that claim.
The judgment of the trial court is reversed and remanded.
REVERSED AND REMANDED.
MADDOX, FAULKNER, JONES and BEATTY, JJ., concur.