Plaintiffs, Faith, Hope and Love, Inc., and Mittie Williams and Richard Williams, filed an amended complaint against defendants, First Alabama Bank of Talladega County and one of its officers, Curtis C. Lackey, alleging in count one, breach of contract; count two, fraud; counts three, four, and five, alleged conversion, breach of fiduciary duty, and wrongful foreclosure, respectively. The trial court granted the defendants' motions for directed verdict at the close of the plaintiffs' evidence on all counts except count one. This count, for breach of contract, was submitted to the jury, and it returned a verdict for the defendants, evidently believing defendants' version of the facts. Plaintiffs' post-judgment motions were denied by operation of law pursuant to Rule 59.1, A.R.Civ.P., and plaintiffs appealed. We affirm.
 I. FACTS
Faith, Hope and Love, Inc. (the "corporation") was engaged in the business of imprinting such clothing items as T-shirts and sweat suits. Mittie Williams ("Mittie") owned 98% of the stock of the corporation and was the president and chairman of the board. Her husband, Richard Williams ("Richard"), was the vice-president of the corporation.
During the fall of 1978, the Williamses began to pursue plans to move their business from Birmingham to Talladega. Seeking capital for their new venture, the Williamses initiated meetings with Curtis C. Lackey, an officer, director, and shareholder of Talladega National Bank (now known as "First Alabama Bank of Talladega *Page 710 
County," and hereinafter referred to as "the bank").
Mittie testified that Lackey promised to extend $100,000 in credit. Richard testified that Lackey further promised that no repayment would be required for at least one year. The Williamses also testified that they trusted Lackey and signed blank note and mortgage forms. Mittie claimed that Lackey assured her that the only collateral the bank would require was "the farm" property near Embry Crossroads.
Lackey testified that he only agreed to lend $50,000. Further, he said he told the Williamses the bank would require for collateral not only "the farm" property, but also parcels at Kewanee Shores and Point Aquarius. Documents introduced into evidence by defendants (which bear plaintiffs' signatures) support Lackey's version of the agreement.
From December 18, 1978, to April 16, 1979, the bank advanced to the plaintiffs sums exceeding $50,000. In the early summer of 1979, the bank refused to extend additional credit to plaintiffs, and the bank demanded that plaintiffs begin to repay the loans. In 1980 the bank initiated foreclosure proceedings, and on June 10, 1980, the bank purchased the Williamses' three parcels of real estate at public auction for a total price of $60,000. Suit was filed on June 6, 1980, after foreclosure proceedings had begun.
 II. BREACH OF CONTRACT
Plaintiffs argue in their brief four points for reversing the trial court's denial of their motion for new trial on the contract count. The gist of their claim for breach of contract is that the defendants orally promised to lend $100,000, take only "the farm" as collateral, and not require repayments to begin sooner than one year from the date of the loan.
A. Plaintiffs assert they are due a new trial on the ground of juror misconduct. Plaintiffs' counsel attached his personal affidavit to the post-judgment motions. He stated that he asked prospective jurors on voir dire examination whether they knew defendants' counsel. No affirmative response was given by any of the persons who were selected as jurors. During a break in the trial, he alleged, one of defendants' attorneys told him there were a "couple of ringers" on the jury, and, after the verdict was returned, a juror called one of defendants' attorneys by his first name. No affidavits of any juror or any other evidence on this point was presented. Also, we note that the voir dire proceedings do not appear in the record on appeal. We cannot say that the trial judge abused his discretion in deciding this affidavit failed to prove there were "improper or non-existent responses to voir dire questions [which] resulted in `probable prejudice' to the movant."Wallace v. Campbell, 475 So.2d 521, 522 (Ala. 1985).
B. Plaintiffs argue that the judge erred in sustaining defendants' objection to reading into evidence portions of Lackey's deposition which would indicate that the Williamses' property, after foreclosure, was listed as an asset of Talladega National Bank at the time it was bought by First Alabama. Plaintiffs evidently intended to argue the existence of a scheme whereby the bank would get possession of plaintiffs' property through foreclosure at less than fair market value and thereby increase the net worth of the bank prior to its sale. Such a scheme would personally benefit Lackey, too, since he was a stockholder in the bank. Plaintiffs' counsel argued to the judge, "It is not inadmissible. It shows motive for this or for what this man did." The evidence was objected to as irrelevant and immaterial, or, alternatively, as being prejudicial without having any real probative value.
Though perhaps technically admissible to show a motive for the bank and Lackey to lie to the Williamses, induce them into a contract, and breach that contract to "trick" the Williamses out of their land through foreclosure, we cannot say the trial judge erred in sustaining the objection. As to whether there was an oral contract such as the Williamses argued, the *Page 711 
probative value of this evidence is slight. The prejudicial possibilities are obvious — plaintiffs could directly show to the jury the wealth of the defendants. "Evidence, although logically relevant, may be excluded where it would serve comparatively little or no purpose except to arouse the passion, prejudices or sympathy of the jury. 31A C.J.S. Evidence § 159, p. 436." American Pamcor, Inc. v. Evans,288 Ala. 416, 420, 261 So.2d 739, 743 (1972).
C. Plaintiffs assert that the trial judge erred in sustaining defendants' objections to the introduction of evidence tending to prove that Mittie suffered mental anguish as a direct result of the alleged breach of contract. Generally, mental anguish is not a recoverable element of damages in an action for breach of contract unless the contractual duty is coupled with matters of mental concern so that a breach will necessarily or reasonably result in mental anguish. Taylor v. Baptist Medical Center,Inc., 400 So.2d 369, 374 (Ala. 1981). The trial judge did not err in determining that this was a business arrangement in which no special circumstances were apparent to the bank to make it aware that a breach would necessarily, or reasonably be expected to, result in mental anguish.
If the trial court was in error, the harmless error rule would apply. Rule 61, A.R.Civ.P.; Rule 45, A.R.A.P. This issue relates only to damages. Since the jury determined there was no liability, any error as to admissibility of evidence relating to damages would be harmless.
D. Plaintiffs' counsel asked Mittie, "What is the financial worth of Faith, Hope and Love now, please, ma'am?" Defendants' objection on the ground of relevancy was sustained. Plaintiffs' brief says, "there is no specific, scientific way to prove loss of earnings or loss of profits to a business. The plaintiffs attempted to show the financial condition of the corporation prior to dealing with the defendant bank . . . and then . . . the present worth of the corporation after foreclosure." We agree with defendants that plaintiffs' attempted testimony was mere conjecture and an attempt to circumvent the rule that damages for lost profits are not recoverable if speculative. See Mall, Inc. v. Robbins, 412 So.2d 1197 (Ala. 1982). Moreover, since this testimony goes to the issue of damages, the harmless error rule is applicable, since we affirm the finding of no liability.
 III. CONVERSION
The plaintiffs' brief discusses the directed verdicts on three counts in a single section of the brief. Though we find no specific argument as to count three of the amended complaint — for conversion — we reaffirm the rule that an action for conversion will not lie for the taking of real property. SeeHatfield v. Spears, 380 So.2d 262 (Ala. 1980).
 IV. BREACH OF FIDUCIARY DUTY
"Courts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship which does not impose a fiduciary duty of disclosure on the bank. A fiduciary duty may arise when the customer reposes trust in a bank and relies on the bank for financial advice, or in other special circumstances." Baylor v. Jordan, 445 So.2d 254, 256
(Ala. 1984).
The only authority cited by plaintiffs is Brasher v. FirstNational Bank of Birmingham, 232 Ala. 340, 168 So. 42 (1936). In Brasher, the trial court granted the defendant bank's demurrer to an action on the case which alleged that the bank had advised plaintiff about her legal interests in proceeds of her deceased husband's insurance, about probate of the will, and about management and investment of the property of the estate. The Court said that, assuming the allegations to be true, the bank "undertook to advise the plaintiff in respect to her interest, and did advise her to enter into said consent decree, it was under duty to disclose to her its contents. . . ." 232 Ala. at 345, 168 So. at 47.
During the cross-examination of Mittie, a portion of her deposition was used to impeach or clarify her testimony. At *Page 712 
deposition, Mittie said Lackey did not provide her with business counseling. When asked on the witness stand, "and that's correct, isn't it?," Mittie answered, "Yes, probably." Further, in response to defense counsel's question about Lackey's business advice, Mittie responded negatively, "Except he did tell me on one occasion . . . that he didn't want us moving to Talladega. . . . He said, `Don't move to Talladega yet.'" We find this insufficient to prove plaintiffs relied on the bank for financial advice so as to take this case out of the general rule. Neither do we find this to be such "other special circumstances" within the meaning of the passage fromBaylor quoted above. See generally, Annot., "Bank as Fiduciary — Duty of Disclosure," 70 A.L.R.3d 1344 (1976).
Moreover, if the evidence did show a fiduciary relationship, we would be compelled to affirm the directed verdict on a statute of limitations ground. The discussion of the limitations issue appears below in part VI of this opinion. The one-year statute of limitations in effect at the time of these events, Code 1975, § 6-2-39 (a)(5), would bar the count for breach of fiduciary duty.
 V. WRONGFUL FORECLOSURE
Count five of the amended complaint sought equitable relief, primarily an order setting aside the foreclosure sale. Plaintiffs' brief argues, "There was ample evidence that the bank had made the commitment on the terms and conditions claimed by the plaintiffs. If such was the case, then the bank had no right to proceed with the foreclosure. . . ."
However, the jury, in absolving the defendants of liability for breach of contract, necessarily rejected the plaintiffs' testimony as to the contents of their loan agreement with the bank. Therefore, the directed verdict on count five, even if error, is harmless error: the notes and contracts underlying the mortgages were valid, and plaintiffs advance no allegations that the foreclosures were not procedurally proper. See Bruckv. Jim Walter Corp., 470 So.2d 1141 (Ala. 1985) (deciding that the granting of a directed verdict on a negligent entrustment count was harmless error, since the jury returned a verdict in favor of the defendant driver on the negligence count).
 VI. FRAUD
The trial court granted defendants' motion for summary judgment on the fraud count on the ground the plaintiffs had notice of the facts relative to fraud more than one year prior to the filing of the complaint on June 6, 1980. (The version of Code 1975, § 6-2-39 (a)(5), in effect at the time of these events provided for a one-year statute of limitations. Code 1975, § 6-2-3, provides that in actions for fraud the claim does not accrue "until the discovery by the aggrieved party of the fact constituting the fraud." We interpret this "discovery rule" to mean the claim accrues when there are discovered such facts as would put a reasonable person on inquiry which, if pursued, would lead to discovery of the fraud. See, for example, Jones v. Davis, 477 So.2d 285 (Ala. 1985).)
On February 22, 1984, defendants filed a motion for summary judgment as to all counts of the amended complaint. On September 18, 1984, the trial judge set the motion for hearing on October 12, 1984. Not until October 11, 1984, did plaintiffs file an "objection to motion for summary judgment," which simply asserted that "there are genuine issues of material fact in the subject case" and referred the court "to all discovery in the subject case including the deposition of Mittie Williams and Defendants in subject case." The trial judge heard argument on October 12, but did not rule until the second day of the trial, October 30, 1984. The colloquy between the trial judge and counsel appears in the beginning portion of the reporter's transcript. The judge refused to accept or consider on October 29 handwritten affidavits from Mittie and Richard dated and filed on October 22. The judge did consider memoranda of counsel filed on October 16 and 18, 1984. *Page 713 
Plaintiffs correctly point out that on June 27, 1983, the judge ordered that all pre-trial motions be filed within 180 days, and that the defendants' motion for summary judgment of February 22, 1984, was filed more than 180 days later. Their brief argues that the judge should not have considered the motion. This argument appears not to have been presented to the trial judge, and we will presume the judge intended to modify his order as relating to the 180-day period.
The only other error argued by plaintiffs is the refusal of the judge on October 29, 1984, to accept the affidavits of Richard and Mittie of October 22, 1984, or to allow Richard to testify as to when he learned of the bank's intent not to extend credit in the amount of $100,000. We will not reverse the trial judge's ruling rejecting the affidavits.
Rule 56 (c), A.R.Civ.P., provides, "The adverse party prior to the day of hearing may serve opposing affidavits." The hearing was on October 12, 1984. The judge allowed the parties a week to file written memoranda of law, but not additional evidence. The judge did not err in refusing to consider the affidavits. Osborn v. Johns, 468 So.2d 103 (Ala. 1985). Summary judgment having been rendered, the proffered testimony of Richard as to when he discovered the fraud would have been irrelevant.
Defendants' trial memorandum and their brief here quote extensive portions of Richard's testimony given at preliminary injunction hearings on May 15 and June 5, 1981. In responses to his own lawyer's questions, Richard unequivocally testified that Lackey told him in April or May of 1979 that the bank would not extend any more credit to plaintiffs. Our review of Richard's entire testimony failed to disclose any ambiguity or conflict in Richard's testimony on this point.
The refusal of the bank to extend any more credit is, as a matter of law, a fact that would put a reasonable person on inquiry which, if pursued, would have led to the discovery of the fraud, if any. Suit was not filed until June 6, 1980, more than one year after notice to Richard in April or May of 1979. Under these facts, notice to Richard was notice to Mittie and the corporation, too. See generally, Code 1975, § 8-2-8;Shelter Modular Corp. v. Cardinal Enterprises, Inc.,347 So.2d 1334 (Ala. 1977); 37 Am.Jur.2d, Fraud and Deceit, § 410, p. 556 (1968) (relating to constructive knowledge of corporations or principals based on actual knowledge of an agent). Additionally, we note that mortgages signed by the Williamses and notarized by Lackey were filed in the Talladega Probate Judge's Office in December 1978 and February 1979. These mortgages list all three parcels of real estate owned by the Williamses. As to the ability of the Williamses to dispute the validity of their signatures or the mortgages, compare Hornerv. First National Bank of Mobile, 473 So.2d 1025 (Ala. 1985).
Although it is not necessary to the resolution of this issue, we note that Richard's and Mittie's affidavits contained only a short, conclusory statement that they did not learn of the bank's fraud (refusal to lend $100,000 or limit collateral to "the farm" property) until after June 15, 1979. There was no attempt to rationalize or explain Richard's earlier sworn testimony as to his knowledge in April or May of 1979. Under these facts, we have serious doubts whether the affidavits would create a genuine issue of material fact even if accepted and considered by the judge.
AFFIRMED.
JONES, SHORES and ADAMS, JJ., concur.
TORBERT, C.J., concurs in the result. *Page 714