717 So.2d 759 (1998)
Dorothy Hill BROOKS, individually and as executrix of the last will and testament of Raymond E. Brooks, deceased
v.
Leroy HILL; Hill & Brooks Coffee Company, Inc., a corporation; et al.
1951926.
Supreme Court of Alabama.
June 12, 1998.
*760 Mack B. Binion of Briskman & Binion, P.C., Mobile; and Charles L. Miller, Jr., Mobile, for appellant.
A. Danner Frazer, Jr., and Michael E. Upchurch of Frazer, Greene, Upchurch & Baker, L.L.C., Mobile, for appellees.
SHORES, Justice.
The plaintiff, Dorothy Hill Brooks, individually and as executrix of the last will and testament of her deceased husband, Raymond E. Brooks, appeals from the dismissal of her amended complaint. That amended complaint alleged that Leroy Hill, the majority shareholder, president, and chairman of the board of directors of Hill & Brooks Coffee Company, Inc. ("H & B" or "the corporation"), had wasted corporate assets and, either acting alone or by conspiring with fictitious defendants, had "perpetrated a scheme to devalue" stock in H & B with the intent to purchase it. We affirm.
Raymond E. Brooks (the "decedent") owned a 19% interest in H & B, a closely held corporation. Leroy Hill, the plaintiff's brother, owned the remaining interest. On June 11, 1993, Hill presented the decedent with a proposal to purchase his interest in H & B for the sum of $1,196,753.00, payable over 10 years with interest at 8% per year. On that date, the decedent and Hill executed a written sales agreement containing those terms. Raymond E. Brooks died on October 26, 1994, and his widow was appointed executrix of his estate.
In June 1995, the widow filed a one-count complaint alleging that her brother (Hill) and H & B, aided and abetted by fictitious defendants, had perpetrated a fraud upon the decedent in connection with the purchase of his stock. That complaint stated in pertinent part:
"8.... [I]t was represented to Plaintiff's decedent, Brooks, by Hill, individually and on behalf of H & B that the stock of H *761 & B had a value of $62,987.00 per share or a total value for Brooks' shares of $1,196,753.00, the Defendants, Hill and H & B knowing full well the value of the stock was far in excess of the representation $62,987.00 per share and that the value of Brooks' interest was far in excess of the $1,196,753. [Hill's] representation [to the decedent] was made on June 10th, 1993."
The widow sought to recover compensatory and punitive damages, contending that the decedent had relied to his detriment on Hill's representation by selling his interest in H & B on June 11, 1993, at a price below its actual value.
The widow subsequently amended her complaint to include three additional counts. The first count set out in the amended complaint, designated as "count two," reads in pertinent part:
"12. At all times material hereto Hill individually and as an officer, director and majority shareholder of H & B owed Plaintiff a fiduciary duty to act in good faith with respect to matters affecting the corporation.
"13. Hill individually and in his corporate capacity ... breached fiduciary duties he owed to the Plaintiff by using the assets of the corporation to benefit his personal interests, which said breaches included but were not limited to:
"(a) the repeated use of employees of H & B to perform personal services for Defendant;
"(b) improving property owned by Defendant and paying for same with assets of H & B;
"(c) the personal use of corporate assets, including an airplane, for purposes that in no manner benefitted H & B.
"14. As a proximate result of the Defendant's breaches and his waste of corporate assets, Plaintiff was damaged in that the value of Brooks' stock was substantially reduced in value.
"15. Defendant's waste of corporate assets for his personal benefit and to the detriment of the corporation's and Plaintiff's interests were willful, wanton and with reckless disregard to the interests of the plaintiff.
"WHEREFORE, the premises considered, Plaintiff demands judgment against the Defendant, and claims sums to adequately compensate for the fair value of the stock of the decedent, Brooks, as well as punitive and exemplary damages for the wrongful actions alleged herein."
In counts three and four of the amended complaint, the plaintiff adopts the factual allegations underlying her claims in counts one and two. Count three reads in pertinent part:
"17. On or about June 11, 1993, and at all material times ..., Defendant Leroy Hill, individually and as President, Chairman of the Board of Directors and majority shareholder of H & B, perpetrated a scheme to devalue the Plaintiff's stock with the intent to purchase it and to defraud Plaintiff."
Count four asserts almost identical wrongdoing, except that it alleges the existence of a conspiracy:
"20. Defendants, Hill, individually and as President, Chairman of the Board of Directors, and majority shareholder of H & B and [fictitious defendants] wilfully and intentionally conspired to perpetrate a fraud upon the Plaintiff and to devalue the Estate's stock with the intent to purchase same and/or benefit from the purchase of the stock by the corporation."
Under counts three and four, the widow demanded damages "to adequately compensate for the fair value of the stock of the decedent, Brooks, as well as punitive and exemplary damages."
As to the widow's fraud claim in the original complaint, the defendants filed a motion for judgment on the pleadings; the defendants subsequently filed a motion to dismiss the amended complaint. The trial court granted both motions. It held that count one, stated in the original complaint, stated a claim for a fraud perpetrated upon the decedent and that such a claim abated upon his death. The widow does not appeal as to count one. In dismissing the amended complaint, the trial court held that the plaintiff lacked standing to pursue the breach-of-fiduciary-duty *762 claim stated in count two, and that counts three and four stated claims in the nature of fraud claims and those claims, like the claim stated in count one, had abated upon the decedent's death. The widow appeals the dismissal of the counts of her amended complaint.

I.
The widow argues that she could recover damages, either individually or as the executrix of her decedent's estate, pursuant to her claim in count two against Hill alleging breach of fiduciary duty. We disagree. Count two charges that Hill breached a fiduciary duty "by using the assets of the corporation to benefit his personal interests" and that "[a]s a proximate result of [Hill's] waste of corporate assets, Plaintiff was damaged in that the value of Brooks' stock was substantially reduced in value." It is undisputed that the plaintiff never owned any interest in H & B, and, therefore, that Hill owed her no fiduciary duty in her individual capacity. The plaintiff likewise cannot maintain an action to recover directly in her capacity as executrix of the decedent's estate because, even if he were still alive, the decedent could not have recovered on his own behalf for the wrongdoing alleged in count two. This Court has previously held that an allegation of waste of corporate assets does not permit a minority stockholder to recover on his own behalf; rather, such wrongdoing gives rise only to a derivative claim, which must be brought on behalf of the corporation: "The waste of corporate assets by majority stockholders is primarily an injury to the corporation itself. The injury to minority stockholders is secondary." Galbreath v. Scott, 433 So.2d 454, 457 (Ala.1983). See also Stallworth v. AmSouth Bank of Alabama, 709 So.2d 458 (Ala.1997); Pegram v. Hebding, 667 So.2d 696 (Ala.1995); Shelton v. Thompson, 544 So.2d 845 (Ala.1989). Accordingly, assuming the plaintiff could bring a claim based on Hill's waste of H & B assets, that claim could have been brought only as a derivative claim on behalf of the corporation; the plaintiff did not bring such a claim. The trial court properly dismissed count two of the amended complaint.

II.
The widow also argues that the trial court erred in dismissing counts three and four of her amended complaint. She contends that the trial court mistakenly construed her allegations of a "scheme to devalue [the decedent's] stock with the intent to purchase it" to be in the nature of fraud claims, which would abate upon the decedent's death. Rather, the plaintiff seems to assert, these allegations state claims of a violation of the provisions of § 10-2B-8.32, Ala.Code 1975, and minority shareholder "oppression" or "squeeze-out." She characterizes these claims as sounding in contract, and, therefore, she reasons, they survived in her favor as the decedent's personal representative.

A.
Section 10-2B-8.32, Ala.Code 1975, provides in pertinent part:
"No president, director, or managing officer of any corporation ... shall do or omit to do any act, or shall make any declaration or statement in writing, or otherwise, with the intent to depreciate the market value of the stock or bonds of such corporation, and with the further intent to enable such president, director, or other managing officer, or any other person, to buy any such stock or bonds at less than the real value thereof." [1]
In Fulton v. Callahan, 621 So.2d 1235, 1245 (Ala.1993), this Court recognized that a shareholder could recover damages on his own behalf for a violation of the statutory provision quoted above, which was then codified at § 10-2A-71, Ala.Code 1975, notwithstanding that it does not expressly provide for a civil remedy. Previously, in Belcher v. Birmingham Trust Nat'l Bank, 348 F.Supp. 61, 147 (N.D.Ala.1968), stay denied, 395 F.2d *763 685 (5th Cir.1968), a federal district court had held that Tit. 10, § 21(63), Ala.Code 1940, a criminal statute with language similar to § 10-2A-71, implied an independent civil cause of action. See Fulton, at 1246. Following the Belcher court, we delineated in Fulton the elements of a claim based on a violation of § 10-2A-71:
"(1) A defendant who is a president, director, or managing officer, irrespective of title, (2) An act or a declaration or statement, in writing or otherwise, (3) Intent to depreciate the value of the corporation's stock or bonds, with the further intent to enable the director or officer defendant, or another person, to buy the corporation's stock or bonds at less than their real value, and (4) damage. The measure of damages is the difference between the real and the depreciated value of the stock at the time the defendant perpetrates the wrongfully depreciating act."
Fulton at 1245-46, citing Belcher, supra, at 147.
The widow argues that, through her allegations (1) that Hill made representations to the decedent that understated the value of H & B stock, (2) that he wasted corporate assets, and (3) that he committed these acts with the intent to purchase the decedent's stock at below its "real value," she has stated a cause of action for "devaluation with intent to purchase," under the terms of § 10-2B-8.32 and our decision in Fulton, supra. It is undisputed, however, that any such claim belonged to the decedent rather than the plaintiff personally. Thus, assuming that she has pleaded sufficient facts to state a claim under § 10-2B-8.32, we still must consider whether that claim would survive the death of the plaintiff's decedent.
Under the Alabama survival statute, § 6-5-462, Ala.Code 1975, an unfiled claim sounding in tort will not survive the death of the person with the claim, Malcolm v. King, 686 So.2d 231 (Ala.1996); Georgia Cas. & Sur. Co. v. White, 582 So.2d 487 (Ala.1991). A claim on a contract, on the other hand, survives in favor of a decedent's personal representative, regardless of whether the decedent had filed an action before his death, McCulley v. SouthTrust Bank of Baldwin County, 575 So.2d 1106 (Ala.1991); Benefield v. Aquaslide `N' Dive Corp., 406 So.2d 873 (Ala.1981). Therefore, because any claim stated under § 10-2B-8.32 belonged to the decedent and he did not file an action prior to his death, such a claim survives in the plaintiff's favor as the decedent's representative generally if the claim arises out of a contract ("ex contractu"), rather than out of a tort ("ex delicto").
In Jefferson County v. Reach, 368 So.2d 250, 252 (Ala.1978), this Court explained:
"The distinction between a claim ex contractu and one ex delicto is found in the nature of the grievance. Where the wrong results from a breach of a promise, the claim is ex contractu. However, if the wrong springs from a breach of a duty either growing out of the relationship of the parties, or imposed by law, the claim is ex delicto."
(Citations omitted.) Further, where the parties have entered into a contract, if the cause of action arises from a breach of duty arising out of the contract, rather than from a breach of a promise of the contract itself, the claim is ex delicto. See, e.g., Lemmond v. Sewell, 473 So.2d 1047, 1049 (Ala.1985) (holding that the plaintiff could not maintain a contract claim based upon a physician's failure to use due care because "[t]he law implies a duty on the part of a physician to exercise due care; it does not imply a promise on his part to do so"); Sanford v. Western Life Ins. Co., 368 So.2d 260, 263 (Ala.1979) (holding that the plaintiff's claims alleging fraud and bad faith were not claims "on a contract" for survival purposes; the insurance contract between the parties "merely establishes the relationship from which ... a legally imposed duty could spring," "whether that duty be of good faith, fair dealing or honest disclosure").
This Court has not specifically held whether the independent cause of action for a violation of the provisions of § 10-2B-8.32 sounds in contract or sounds in tort.[2] In *764 Fulton v. Callahan, we said of a claim alleging a violation of the provisions now codified at § 10-2B-8.32:
"Section 10-2A-71 provides that directors and managing officers owe a duty not to engage in unfair insider dealings for the purpose of buying shareholder stock at less than real value. The statute constitutes a more specific statutory expression of the general fiduciary duty owed by directors and officers to shareholders under other provisions of the Alabama Business Corporation Act. As in an action alleging breach of fiduciary duty, the only relevant facts under § 10-2A-71, for purposes of sufficiency, are the defendant's intent and conduct and the damage incurred by the plaintiff. Thus, even if substantial evidence existed from which a jury could reasonably find that Callahan was indeed aware of all the facts relevant to the value of his stock, he could still recover if the defendants' conduct was otherwise actionable."
621 So.2d at 1246-47 (emphasis added) (citation omitted). Thus, while we have characterized a § 10-2B-8.32 claim as one based on a breach of fiduciary duty by a corporate officer or director, the widow argues that a claim alleging breach of fiduciary duty by a corporate officer sounds in contract.
She argues that corporation law is essentially a form of contract law and that the breach of fiduciary duty by a director or officer should be viewed as a breach of an implied contract. There are contractual aspects present in the formation of corporations and partnerships. However, the fiduciary duties of loyalty and care owed by corporate managers, see Massey v. Disc Mfg., Inc., 601 So.2d 449 (Ala.1992), are imposed by law by virtue of a corporate manager's relationship to the corporation and its stockholders, even if it might be said that contractual agreement gives rise to that relationship. Further, the six-year statute of limitations is applicable to "[a]ctions upon any simple contract," § 6-2-34(9), Ala.Code 1975; Romar Development Co. v. Gulf View Management Corp., 644 So.2d 462 (Ala.1994). However, this Court has previously held that a claim alleging breach of fiduciary duty is governed by the two-year limitations period of § 6-2-38(l), Ala.Code 1975, which controls "[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in [the other provisions of § 6-2-38]." (Emphasis added.) See Travis v. Ziter, 681 So.2d 1348, 1350 n. 1 (Ala.1996); see also System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala.1996); Davis v. Brown, 513 So.2d 1001 (Ala.1987); Faith, Hope & Love, Inc. v. First Alabama Bank of Talladega County, N.A., 496 So.2d 708 (Ala.1986). A claim based on an alleged breach of the fiduciary duty owed by corporate officers under § 10-2B-8.32 sounds in tort. Thus, the claim stated by the widow in this case did not survive the decedent's death.

B.
The widow also argues that her complaint states a claim of minority shareholder "oppression" or "squeeze-out," a cause of action recognized by this Court in Burt v. Burt Boiler Works, Inc., 360 So.2d 327 (Ala.1978). In that case, we recognized that majority stockholders of a closely held corporation "owe a duty to at least act fairly to the minority interests, and [that] the majority cannot avoid that duty merely because the action taken is legally authorized." Id. at 331. In rejecting the view that "a majority may always regulate and control the lawful exercise of corporate powers," the Court, quoting O'Neal, Close Corporations, § 8.07, explained, "`Where several owners carry on an enterprise together (as they usually do in a close corporation), their relationship should be considered a fiduciary one similar to the relationship among partners. The fact that the enterprise is incorporated should not substantially change the picture.'" 360 So.2d at 331-32. We concluded, therefore, that should majority shareholders in a close corporation use their right of control to "deprive the minority of their just share of the *765 corporate gains, such would, of course, be actionable." Id. at 332.
In several subsequent cases we have reaffirmed the viability of the squeeze-out cause of action. See Stallworth v. Am-South Bank, supra; Michaud v. Morris, 603 So.2d 886 (Ala.1992); Ex parte Brown, 562 So.2d 485 (Ala.1990); Galbreath v. Scott, supra. We do so again here and confirm the general proposition that minority shareholders in a close corporation have "a right to fairness by the majority," Michaud, supra, at 888. We have recently acknowledged that "the squeeze-out cause of action is not a panacea for any and all conduct undertaken by majority shareholders of a close corporation that could be deemed `unfair' to the minority." Stallworth, supra, 709 So.2d at 467. Rather, the underpinnings of the squeeze-out cause of action demonstrate that it is meant to be a remedy for a more specific type of unfairness that may arise from the hybrid nature of close corporations. As we recently explained,
"[O]ur adoption of a cause of action for the squeeze-out of minority shareholders in a close corporation is based to a significant degree upon the recognition that a close corporation enterprise often `acquires many of the attributes of a partnership or sole proprietorship and ceases to fit neatly into the classical corporate scheme.' Galbreath [v. Scott], 433 So.2d [454] at 457 [(Ala.1983) ] (citation omitted)."
Stallworth, supra, 709 So.2d at 467. In forming a close corporation, the shareholders themselves naturally often view their relationship as akin to that of partners, who will each share equitably in the income derived from the enterprise. However, the corporate form that governs their legal relationship assigns control of the corporation to the majority,[3] who, by virtue of that power, would be able to frustrate the minority's "basic expectation[] ... to share proportionally in corporate gains," Michaud v. Morris, supra, at 888, by excluding the minority from salaried employment as officers, directors, or employees; refusing to declare dividends; and eliminating other privileges that might flow to the minority from the corporation.
Further, because of the minority shareholder's prospect of being cut off from corporate income and privileges, the plight of a minority shareholder in a close corporation, as distinguished from both a partner in a partnership and a minority shareholder in a publicly traded corporation, is unique. Traditionally, a partner who believed he had been deprived of profits due him had the power to obtain a dissolution, an accounting, and a settlement. See, e.g., Jebeles v. Costellos, 391 So.2d 1024 (Ala.1980); Jones v. Styles, 268 Ala. 595, 109 So.2d 713 (1959). Similar remedies are available under the Alabama Uniform Partnership Act, §§ 10-8A-101 et seq., Ala.Code 1975; see §§ 10-8A-405, -601, -602, -701, -801, -807. However, a shareholder in a corporation, whether close or public, ordinarily lacks the power to unilaterally withdraw, see 18 C.J.S. Corporations § 310 (1990), or to force a dissolution. Cf. Levine v. Beem, 608 So.2d 373 (Ala.1992) (holding that dissolution of a corporation is an extreme remedy and should be ordered only if the facts clearly warrant it); Johnston v. Livingston Nursing Home, Inc., 282 Ala. 309, 211 So.2d 151 (1968) (alleged mismanagement and quarrels between stockholder sisters of close corporation did not justify the appointment of a receiver and dissolution of the corporation). This is not especially problematic for a minority shareholder of a public corporation because the only benefits he would normally expect to receive by virtue of his stock ownership would come through dividend distribution and an increase in share value recognized upon a sale, which is obtainable with relative ease and efficiency through the operation of the national securities market. See generally Charles R. O'Kelley, Jr., and Robert B. Thompson, Corporation and Other Business Associations; Cases and Materials 156-75 (1992). In contrast, the reasonable expectations of a minority shareholder of a close corporation may include greater direct participation in the affairs of *766 the corporation. See Stallworth, Michaud, supra. In addition, if the minority shareholder of the close corporation desires to leave the enterprise, his shares often "cannot, as a practical matter, be sold," Galbreath, 433 So.2d at 457. This is so because the close corporation's shares are not publicly traded and third parties may be reluctant to assume the vulnerable position of the minority shareholder by purchasing his interest; thus, the only market available for such shares may be the "squeezing" majority shareholders, who often would have almost no incentive to purchase the minority's shares at fair value because the majority might already be using the minority's capital without distributing income earned thereon. Thus, no matter how "oppressive" or "unfair" it might have seemed for it to do so, the majority, as long as its actions were otherwise legally authorized, could use its right of control to put the minority shareholder into a situation where he had only two, equally unappealing, options: "(1) hold his stock in perpetuity while receiving no earnings thereon, or (2) sell out at an unreasonably low price to the majority shareholder." Andrew P. Campbell, Litigating Minority Shareholder Rights and the New Tort of Oppression, 53 Ala. Law. 108 (1992).
It is toward remedying this more specific kind of unfairness, whereby the majority of the shareholders in a close corporation is able to use its right of control to exert pressure upon, i.e., to "squeeze," the minority by reducing or eliminating its income, coupled with the minority's practical inability to withdraw, that the squeeze-out cause of action is rightfully directed. It does not permit a minority shareholder to recover personally for officer or director wrongdoing where the primary injury is to the corporation itself. A shareholder has always had a remedy for such malfeasance: a derivative action brought on behalf of the corporation, which is the real party in interest. See Part I, ante; Stallworth, Galbreath, supra. The fact that a corporation is closely held does not transform injuries to the corporation that harm stockholders only derivatively into injuries to the shareholders personally for which they might recover directly.
The widow maintains that her complaint should not have been dismissed, because, she seems to argue, it states a claim of squeeze-out. Her brief is somewhat unclear on this point in that it does not seem to distinguish between the "squeeze-out" cause of action recognized in Burt v. Burt Boiler Works and the independent cause of action for "devaluation with intent to purchase" recognized in Fulton v. Callahan as a remedy for a violation of the provisions of § 10-2B-8.32, Ala. Code 1975. Admittedly, some of the language employed in Fulton v. Callahan could suggest at least some overlap.[4] However, the two claims are distinct. By the terms of § 10-2B-8.32, the fiduciary duty prohibiting intentional devaluation of stock with intent to purchase applies to the "president, director, or managing officer of any corporation" (emphasis added), and is meant to prevent insider trading and director self-dealing generally, without regard to differences between corporations that are publicly traded and those that are closely held. By contrast, the duty not to "oppress" or "squeeze out" minority shareholders is peculiar to those in control of close corporations and arises primarily because of the recognized differences *767 between close and public corporations that would otherwise allow the majority of a close corporation to exploit its right of control and the minority's inability to withdraw, in order to unfairly deprive the minority of its just share of corporate gains.
For reasons already stated, the widow cannot maintain a cause of action based on a violation of the provisions of § 10-2B-8.32, but we still must determine whether she may pursue a claim based on a squeeze-out that might have been perpetrated upon her decedent. Two members of this Court have previously argued that the squeeze-out cause of action is ex contractu because, they maintain, it is founded principally upon the breach of an express or implied promise that all shareholders of a close corporation will share equitably in corporate gains. See Stallworth v. AmSouth Bank, supra, 709 So.2d at 469-470 (Maddox, J., dissenting); Fulton v. Callahan, supra, 621 So.2d at 1254-55 (Houston, J., concurring specially). See also Michael E. DeBowe, "Oppression" of Minority Shareholders: Contract, Not Tort, 54 Ala. Law. 128 (1993). The plaintiff adopts this position, alleging that her decedent was "squeezed out" of H & B and arguing that he had a contract claim that survived his death. The defendants counter by arguing that the claim does not survive because it is based upon the breach of a fiduciary duty that is imposed by law by virtue of the parties' relationships, even if those relationships arise out of a contract. However, the facts alleged by the widow's complaint, even if proven true, do not give rise to such a claim.
The widow alleges that Hill devalued the decedent's stock in H & B by wasting corporate assets and that in making an offer to purchase the decedent's stock Hill misrepresented the actual value of H & B. However, a minority shareholder cannot recover on his own behalf for a director's waste of corporate assets, even in the close corporation context. Stallworth, Galbreath, supra. Thus, Hill's alleged waste of H & B assets cannot be the basis of a squeeze-out claim in the widow's favor. We similarly conclude that Hill's alleged misrepresentation as to the value of H & B does not give rise to a squeeze-out claim. One could certainly deem it "unfair" for a majority shareholder of a close corporation to misrepresent a material fact to a minority shareholder in connection with a purchase of his shares. But while such wrongdoing suggests that a minority shareholder might have been defrauded, it does not suggest that the minority shareholder has also been "squeezed out" of the corporation. The widow has not asserted that her decedent was deprived of his fair share of corporate gains, such as salaried employment, dividends, or other corporate privileges he reasonably might have expected to receive by virtue of his position as a stockholder. Nor has the widow alleged that Hill used his right of control in an attempt to coerce or "squeeze" the decedent into accepting an unreasonably low price for his shares, either by threatening to deprive him of income flowing from the corporation or even by simply "stonewalling" in purchase negotiations in an attempt to take advantage of the practical difficulty the decedent might have had in selling his interest to a third party. Rather, the complaint asserts that Hill simply made a misrepresentation of material fact, upon which the decedent relied to his detriment. The decedent would have had a remedy for such alleged wrongdoing in the form of a fraud cause of action, but such a cause of action would sound in tort and would have abated upon the decedent's death. Miller v. Dobbs Mobile Bay, Inc. 661 So.2d 203 (Ala.1995). Clearly, however, the duty to refrain from making false representations does not spring from the vulnerability of a minority shareholder in the context of a close corporation.[5] Based on the foregoing, we *768 hold that the widow's complaint does not state a claim of squeeze-out.
The trial court correctly dismissed the amended complaint. The widow could not recover directly for the waste of corporate assets alleged in count two; such harm would give rise to a derivative claim only. Nor can the widow maintain her § 10-2B-8.32 claim for "devaluation with intent to purchase" because, as a claim alleging a breach of fiduciary duty, it sounded in tort and abated upon her decedent's death. Finally, we conclude that the complaint fails to state facts giving rise to a claim based on the squeeze-out of her decedent as a minority shareholder in a close corporation. The judgment of the trial court is hereby affirmed.
AFFIRMED.
ALMON, HOUSTON, KENNEDY, and COOK, JJ., concur.
HOOPER, C.J., and SEE, J., concur in the result.
MADDOX, J., concurs in the result in part and dissents in part.
LYONS, J., recuses himself.
MADDOX, Justice (concurring in the result in part and dissenting in part).
This appeal involves questions concerning the rights of minority shareholders in a close corporation. Specifically, this Court is presented with the question of what kind of claims the plaintiff brought and whether the trial court appropriately applied the law to those claims. Because I disagree with the majority's rationale and most of its conclusions, I respectfully concur in the result in part and dissent in part.

Facts and Procedural History
Raymond E. Brooks owned a 19% interest in the Hill & Brooks Coffee Company (the "Company"). The remaining interest in the Company was owned by Leroy Hill, Mr. Brooks's brother-in-law. On June 11, 1993, Hill presented Mr. Brooks with a proposal for Hill to purchase Mr. Brooks's share of the Company for $1,196,753.00 to be paid over 10 years at 8% interest per year. They completed the sale on that date by executing a written sales agreement. Mr. Brooks died on October 26, 1994.
Following Mr. Brooks's death, his wife, Dorothy Hill Brooks, was appointed executrix of his estate. She sued Hill and the Company, claiming that the defendants had misrepresented the value of her late husband's stock and had wrongfully induced him into signing an agreement to sell the stock. She later amended her complaint to allege a breach of fiduciary duty, fraud, and a "willful and intentional" conspiracy to devalue her late husband's stock with intent to purchase it.
The defendants' main arguments in support of the trial court's judgment dismissing Brooks's claims stated in her amended complaint are that:
1. She had no standing to bring those claims.
2. Her husband had sold his stock pursuant to a written agreement.
3. Any alleged misrepresentation as to the value of the stock occurred, if at all, on June 11, 1993; the amended complaint alleging a breach of fiduciary duty, fraud, and conspiracy to devalue her husband's stock with intent to purchase it, was not filed until January 18, 1996; and the filing of the amended complaint did not relate back to the date of the filing of the original complaint.
The trial court granted the defendants' motion to dismiss the amended complaint. Brooks appealed.

I.
The majority concludes that the plaintiff did not allege sufficient facts to support a claim of "squeeze-out." I disagree. Because my conclusions in this case rest largely upon my understanding of the nature of that claim, I will address that issue first.
The nature of the squeeze-out cause of action is the subject of great debate in Alabama and elsewhere. In Burt v. Burt Boiler Works, Inc., 360 So.2d 327 (Ala.1978), this Court first recognized a cause of action for the squeeze-out of minority shareholders. As a preliminary matter, the Burt Boiler *769 Works Court stated that "[i]t is no longer seriously debated that majority shareholders owe a duty to at least act fairly to the minority interests." Id. at 331. A violation of that duty can give rise to a cause of action. Such a cause of action can arise when the majority shareholders, "acting through the board and corporate officers, which they control, deprive the minority stockholders of their just share of the corporate gains." Id. at 332.
In Galbreath v. Scott, 433 So.2d 454 (Ala. 1983), the Court reaffirmed the concept of the squeeze-out cause of action. In that case, however, the complaint had been based on a claim that the majority shareholders were wasting corporate assets. The Court held that the claim was properly a derivative one and that the injury to shareholders was only secondary. "In such an action the corporation is the real party in interest and would be the one in whose favor a judgment would be rendered." Id. at 457.
The modern squeeze-out claim came into its own in Ex parte Brown, 562 So.2d 485 (Ala.1990). In that case, the action was based on a claim that the majority shareholders had attempted to force the minority owners to sell their shares at a price below fair value. The Court held:
"The minority has made an affirmative showing that the majority has systematically sought to squeeze out the minority.... We direct the trial court on remand to determine whether the majority has acted in the best interest of all the stockholders or whether its decisions were made for the purpose of squeezing out the minority, as the bare facts seem to suggest. If the trial judge determines that the rights and interests of the minority stockholders have been prejudiced by the actions of the majority stockholders, he shall determine and fix an amount necessary to compensate the minority for this breach of duty owed them by the majority."
Id. at 494 (citations omitted).
Despite our recognition of the squeeze-out cause of action, we nevertheless did not specify in Brown whether it was grounded in contract or in tort. Shortly thereafter, members of the bar began to disagree over the nature of the squeeze-out cause of action.[6] In his concurring opinion in Fulton v. Callahan, 621 So.2d 1235 (Ala.1993), Justice Houston explained his reasons for believing that the cause of action is one evolving out of contract rather than tort. In a later case, Justice Houston expressed his hope that this Court "would clarify the nature of the cause of action for oppression or squeeze-out of minority stockholders and the rules regarding standing to bring such an action." Gilliland v. USCO Power Equipment Corp., 631 So.2d 938, 939 (Ala.1994) (Houston, J., concurring in the result). Because Gilliland was reversed on other grounds, that case did not present an appropriate opportunity for this Court to accept Justice Houston's suggestion.
A useful way of understanding the nature of close corporations is to examine the law relating to joint ventures and partnerships.[7] By considering the issues presented in this case from that perspective, one may understand the creation of a close corporation as the creation of "a long-term relational contract which contemplates that each participant will contribute capital or services and that proceeds will be equitably shared." J.A.C. Hetherington, Defining the Scope of Controlling Shareholders' Fiduciary Responsibilities, 22 Wake Forest L.Rev. 9, 22 (1987). Of course, the contract establishing the corporation is embodied in the articles of incorporation. It governs the duties and responsibilities of the shareholders, directors, and officers. That written contract may not, however, contain an explicit statement of all the parties' understandings, but it is implicit *770 that "parties who form closely held firms intend an equitable sharing of returns." Id. at 28. Consequently, I would hold that if the articles do not explicitly reflect that intention of the shareholders, then that intention should be implied.
My view of the nature of the squeeze-out cause of action is based on the theory of an implicit agreement to share the proceeds from the corporation. Squeeze-out claims "can only be given concrete meaning by reference to the explicit or implicit ex ante understanding of the parties and reasonable expectations based upon that understanding." Id. at 25. That understanding, as this Court recognized in Burt Boiler Works, includes a requirement of acting fairly. A violation of the duty to act fairly is a breach of the parties' explicit or implicit agreement. For the breach of that agreement, I believe the appropriate remedy is one that would protect the reasonable expectations of the shareholders.
I agree with the late Dean Hodge O'Neal, whose opinions have had a great impact on the development of close corporation law in Alabama, and who wrote:
"[T]he reasonable expectations of the shareholders, as they exist at the inception of the enterprise, and as they develop thereafter through a course of dealing concurred in by all of them, is perhaps the most reliable guide to a just solution of a dispute among shareholders, at least a dispute among shareholders in the typical close corporation."
F. Hodge O'Neal, Introduction (Symposium: Rights of Minority Shareholders), 22 Wake Forest L.Rev. 1, 5 (1987). According to O'Neal, in fashioning an appropriate remedy in cases before them, trial judges "can `imply' or `construct' additional terms for the contract to give effect to the underlying assumptions of the parties at the time they entered into it and protect reasonable expectations generated by the business relationship which the contract created." Id. at 6.
The distinction I see between closely held corporations and widely held corporations is material to my view on the appropriate resolution of this case. I believe that the most appropriate way of approaching a dispute between shareholders of closely held corporations is to consider it, as discussed above, as a dispute over the breach of the explicit or implicit agreements of the shareholders. Further, I believe that this theory is applicable in cases where the cause of action might traditionally be treated as a derivative claim. Where claims involve closely held corporations, I believe it is more efficient, and a better reflection of the true state of affairs among "partners" in such a business, to treat such claims as claims of squeeze-out.

II.
In count two of her complaint, the plaintiff asserts two claims, one in her individual capacity and one in her capacity as executrix of her husband's estate. With regard to the claim asserted in her individual capacity, the trial court held that because she was not a shareholder in the corporation, Hill owed the plaintiff no fiduciary duty. The majority of this Court reaches the same conclusion. In contrast, I would note that there was no agreement between the plaintiff and the defendants that was breached. Because there was no breach of any agreement, I concur in the result reached by the majority, that the individual claim was properly dismissed.

III.
I now turn to the issue whether the trial court appropriately applied the law to that claim in count two that the plaintiff stated in her capacity as executrix of her husband's estate. The majority concludes that this claim  that the defendant wasted corporate assets  could be pursued only as a derivative claim; it holds, therefore, that the trial court correctly dismissed that claim.
As I have noted above, this Court, in Burt Boiler Works, recognized a duty of majority shareholders to "act fairly" to minority shareholders. That duty arises from the nature of the relationship between the majority shareholders and the minority shareholders. See Southern Pacific Co. v. Bogert, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099 (1919). It is the breach of this duty that gives rise to a *771 claim of minority shareholder squeeze-out.[8] Consequently, I would reverse the trial court's dismissal of this claim.

IV.
Counts three and four allege, I believe, a claim of squeeze-out based on the undervaluation of the stock with intent to purchase, alleged to have occurred on June 11, 1993. The trial court held that the claims asserted by Brooks in counts three and four were claims of fraud. Therefore, the court held, they were based on tort and were subject to the two-year statute of limitations. However, construing the allegations of counts three and four in accordance with Rule 8(f), Ala. R. Civ. P., I believe Brooks has stated a claim of minority shareholder squeeze-out; such a claim would, under contract law, be subject to the six-year statute of limitations. § 6-2-34, Ala.Code 1975. Accordingly, I would reverse the trial court's dismissal of counts three and four.

Conclusion
I concur in the result of the majority opinion insofar as it affirms the dismissal of that claim the plaintiff states in count two in her individual capacity. However, I respectfully dissent from the remainder of the majority's opinion. I would reverse the dismissal of the claim the plaintiff states in count two as executrix of the estate of Raymond Brooks; and I would reverse the dismissal of the plaintiff's claims stated in count three and count four.
NOTES
[1] Section 10-2B-8.32 became effective on January 1, 1995, after the alleged underlying events occurred in this case, but before the plaintiff filed this action. We need not decide what consequences might flow from the date of enactment, because § 10-2B-8.32 simply carries forward, without change, former § 10-2A-71, Ala.Code 1975, which in turn continued § 10-2-167, Ala. Code 1975. See Commentary to § 10-2B-8.32, Ala.Code 1975.
[2] We do acknowledge, however, that, in holding that a predecessor of § 10-2B-8.32 implied a civil cause of action for its violation, the federal court in Belcher expressly stated, "`The disregard of the command of a statute is a wrongful act and a tort.'" 348 F.Supp. at 146, quoting Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946).
[3] "Those who embark in a corporate enterprise as stockholders do so under an implied agreement that the business shall be controlled and directed by a majority of the stockholders." Fulton v. Callahan, supra, 621 So.2d at 1252, quoting Phinizy v. Anniston City Land Co., 195 Ala. 656, 661, 71 So. 469, 471 (1916).
[4] The plaintiff in Fulton v. Callahan was a minority shareholder of a close corporation; he prevailed at trial on his claim that the majority shareholders had intentionally devalued the corporation's stock with the intent to purchase it, in violation of the provisions of § 10-2A-71, Ala. Code 1975, now recodified at § 10-2B-8.32. In holding that sufficient evidence supported the jury's verdict on that claim, the Court concluded its discussion of the issue as follows:

"In our disposition of this issue, we emphasize the special considerations presented by the fact that Callahan was a minority shareholder in a closely held corporation. Callahan's position in the circumstances of this case illustrates the unique vulnerability of minority shareholders in closely held corporations, especially in buy-out negotiations, when often there is no real market for their shares. Because of the limited marketability of their shares and the right of the majority shareholders to control corporate decision-making in closely held corporations, minority shareholders are restricted in their ability to realize the value of their investment, whether it be in the form of salary, dividends, or proceeds from a sale of their stock. Callahan depended, as minority shareholders generally do, on the [majority's] treating him fairly."
[5] We would acknowledge that if the decedent had desired to sell his interest in H & B, he might have had practical difficulties in selling to someone other than Hill, the only other shareholder. We might further concede that in an action alleging fraudulent suppression this circumstance might impact upon whether the majority shareholder of a close corporation would be found to have had a duty to disclose material facts to the minority shareholder. However, a recognition of the potential problems a minority shareholder of a close corporation might have in selling his interest does not imply that a minority shareholder who has been deceived has also been "squeezed-out."
[6] See Andrew P. Campbell, Litigating Minority Shareholder Rights and the New Tort of Oppression, 53 Ala. Law. 108 (1992), and Michael E. DeBow, "Oppression" of Minority Shareholders: Contract, Not Tort, 54 Ala. Law. 128 (1993).
[7] In Galbreath, we recognized that "[w]hen shareholders serve on the board of directors and appoint themselves as officers, the enterprise acquires many of the attributes of a partnership or sole proprietorship and ceases to fit neatly into the classical corporate scheme." 433 So.2d at 457.
[8] In Ex parte Brown, supra, this Court discussed some of the ways the claim may be triggered:

"`The squeezers may refuse to declare dividends; they may drain off the corporation's earnings by exorbitant salaries and bonuses to the majority shareholder-officers and perhaps to their relatives, by high rental agreements for property the corporation leases from majority shareholders, or by unreasonable payments under contracts between the corporation and majority shareholders; they may deprive minority shareholders of corporate offices and of employment by the company; they may cause the corporation to sell its assets at an inadequate price to the majority shareholders or to companies in which the majority are interested; they may organize a new company in which the minority will have no interest, transfer the corporation's assets or business to it, and perhaps then dissolve the old corporation; or they may bring about the merger or consolidation of the corporation under a plan unfair to the minority.'"
562 So.2d at 492 (quoting F.H. O'Neal and R. Thompson, O'Neal's Oppression of Minority Shareholders § 3:02 (2d ed.1985)).